Laubie, J.
This is a case on appeal, involving the validity of a lease from Nixon and wife to Russell on certain lands in the county, for the purpose of drilling for oil, gas or water, held by the defendants, Russell and Hall, Russell having ■conveyed an interest therein to Hall, and which the plaintiff, as a subsequent lessee, claims was forfeited and invalid.
The objections that were taken to testimony during the trial, which testimony was received subject to exception, we now sustain, and such testimony is ruled out. I refer to the testimony which was offered for the purpose of proving fraud and conspiracy on the part of Duffield and others, ■and for the purpose of raising an estoppel.
Of course, we do not mean to include in this, testimony •of the conversations between Nixon and Russell, and Nixon and Hall. •
Passing this, we come to the controlling question in the •case: whether the lease to Russell from Nixon and wife was in force and a valid lease at the time Duffield took his lease, and is still a subsisting and valid lease as against Duffield.
The lease to Russell was made November 14th, 1898, and is peculiar in its provisions. The habendum clause is: ““The party of the second part to have and to hold said premises for the above purposes only (that is, for develop *267 ing oil, gas or water) for and during the term of sixty days from the date hereof, or as long as oiJ, gas or water shall be found in paying quantities.”
'It is different from the ordinary form of habendum clauses in leases of this character, in that^it uses the disjunctive word “or” instead of the conjunctive word “and”. The specified term is for the term of sixty days from the date thereof — or as long,not and as long, as oil,gas or water shall be found in paying quantities.
We perhaps will find why that phraseology was used in the habendum clause of this lease when we examine a further provision, to which the parties refer and upon which this case is to turn. Such further provision is: “The party of the second part further agrees to commence operations within sixty days from the date hereof, or in lieu thereof to pay the first party one dollar per acre per annum; and if failure therein, the party of the first part may cancel this agreement by giving thirty days notice in writing to the party of the second part.”
The specified term aud the time for the commencement of operations could not well be the same. In ordinary leases,- the specified term is the term in which, or the time in which, the lessee must develop the oil or gas, and therefore he must have the well drilled, and the land developed before the expiration of the specified term; but here, instead of that, the lessee has the full period specified of sixty days in which to merely commence operations, and upon failure to do so, to pay a special rental per annum; and the failure to do either, or both, does not make the lease absolutely void, but gives to the lessor the right to declare it so by giving thirty days written notice to the lessee.
The question here is whether or not Russell commenced operations within sixty days from the date of the contract, with the intention, bona fidely, of performing its terms, because it is not claimed that he paid, or offered to pay anything for delay, or that he asked for any delay. If he did so commence, his lease is a valid and subsisting lease, and ihe plaintiff’s nugatory and void.
The DufEeld lease was taken January 31st, 1899, and the sixty days provided for in the Russell lease within which to commence operations expired on the 13th of January, ,1899.
*268 The evidence shows that on that day, January 13, 1899, Russell staked out the well upon the lands; that Nixon was present, saw the stake driven, and then and there he contracted to sell to Russell the timber for the purpose of building a drilling rig for such well. Russell had men there at that time to cut the timber, and the timber was pointed out by Nixon and agreed upon, and part of it was cut that day; and no notice of a claimed cancellation of the lease was served upon Russell until after Nixon made the lease to the plaintiff.
Nothing had been done prior to that time under the lease by Russell. What he did was on the very last day of the sixty days; and he gives as an excuse, that it was almost impossible to obtain the necessary machinery, implements and lumber at Scio, the point of supply, for the purpose of building a rig and drilling the well during the sixty days; that there was an extensive oil excitement there, and so many were seeking these articles and the supply was so limited that it was almost impossible to obtain them, and that in addition thereto, he was delayed by a spell of sickness that he had during the period named: but if, irrespective of all this, he did “commence operations’’ on the last day of the sixty days, that was all that he was bound or required to do, if he in good faith intended to continue the work and perform his contract with reasonable diligence.
If the staking out of the well, making the contract, for the timber for the rig and cutting a portion of the timber upon that day was a commencement of operations, then his lease is valid, as we think he intended, in good faith, to continue operations and perform his contract.
We think there can be no question but that what he did upon that day was a commencement of operations within the meaning of this contract. On general principles we would say this, because the commencement of operations upon the land for the development of oil or gas, if done honestly and bona fidely, with the intention of developing, may consist of a trivial and comparatively insignificant matter when we take into consideration what is to be done. Any act, the performance of which has a tendency to.produce the desired result, is a commencement of operations. But we are not without precedents upon this question. In *269 Fleming Oil & Gas Company v. The South Pennsylvania Oil Company 37 W. Va., 646, the same question was up for determination. In that case the lessee was required to commence operations for the drilling of a well within a certain district in a specified time, and if within a certain period oil or gas was found in the district, then he was to commence within a given time to drill a well upon the land in question.
The lessee, before the expiration of the period within which he was to commence operations, had taken certain levels of that district for the purpose of determining where to drill the well. He had staked out a point where he intended to drill a well, and had entered into a contract for timber for a rig, and the timber was cut in the woods, but lay there for six weeks, and until after the expiration of the time named for the commencement of operations; and it, was held: “That the terms of the covenant contained in said lease must be considered as having been complied with, no matter how slight may have been the commencement of any portion of the work which was a necessary and indispensable part of the work required in putting down the test well, if commenced before the 22nd day of February, 1890, [that was the last day of the period]. Procuring the derrick timbers, is a work which must necessarily precede the manipulation of the auger and drill by means of an engine and other machinery, and the cutting and hewing of the timbers for the purpose of constructing the derrick, which was used in drilling said test well, can be regarded in no other light than that of an important and indispensable portion of the operations in drilling said well. This portion of the work was completed by the 6th day of February, 1890. The machinery was ordered previous to that time, and the well had been located.”
In Henderson et al. v. Ferrell et al., 183 Pa. St., 547, the same question was before the court.
In that case, in the charge to the jury the trial judge said, “That which would constitute a commencement if done bona fidely with the intention of pursuing the development, might be a very trifling and insignificant matter;” and illustrated the proposition by the statement. “The *270 commencement of the buildings for the World’s Exposition, perhaps, was the striking of a pick into the ground,” and that charge was sustained by the supreme court of Pennsylvania and held to be proper under the circumstances of the Case.
In that case the stake had been driven on the last day of the period, to mark the place where the lessee intended to drill the well, and he had directed some lumber to be hauled there, and a portion of it had been placed upon the land when the other parties appeared and stopped the teamster from unloading any more of the lumber, and removed the lumber and the stake; and in that case, as in this, the lessee, as a reason for the delay in commencing operations, and to show his good faith, gave evidence of his inability to procure the machinery and materials necessary for the performance of the work sooner.
But further than that, it is clear from the evidence, in this case, that the lessor understood, and acted upon the assumption that Russell was in the rightful performance of his contract, He was there when the stake was driven and the well located. There was an ice house that would probably interfere with the construction of the rig at that point on his land, and he agreed to remove it, and instead of notifying Russell that the lease was forfeited, he entered into a contract with Russell that day for the sale of the timber for the rig, pointed out the timber in the woods, and knew part of it was cut and that his son had agreed to haul it for Russell; and until he was approached by Duffield and was offered $1000.00 for a lease to him, he treated Russell as being properly in possession of the land; and afterwards when Hall told him he was going to buy an interest in the lease from Russell if everything was all right, he said the lease was valid and everything was satisfactory between them, and induced Hall to take an interest in the lease. Having himself thus acted, and thus acknowledged that Russell had performed his contract, and that the lease was valid, it Would not become this court now to say otherwise.
Further than this Nixon protected himself against any Suit by Duffield by this provision in the lease:‘But lessee herein has notice of a lease or agreement of date November 14, 1898, to Anson H. Russell (and also the present condi *271 tions under the same), signed by said J. W. Nixon, but which is believed to have expired, and. this lease is made subject to whatever-rights said Anson H. Russell or assigns may have thereunder, and as to the same the lessors herein make no representation or guaranty.”
D .A, Hollingsworth, Carey, Boyle & Mullins, and IF. 8. Miller, for Plaintiff.
W. G. 8hotwell and J. B. Chapman, for Defendant.
As for the plaintiff, he entered into this speculation with -a knowledge of all the facts, and assumed all the risk of the legality of the Russell lease, and he is not entitled to any equitable consideration.
Decree therefore will be entered for defendants.