## W. S. COX, Respondent, v. J. T. MILLER and CHRISTINA MILLER, Appellants.

Kansas City Court of Appeals, February 7, 1921.

1. **MINES AND MINING: Lease: Lessee Did Not Forfeit Lease Where he Paid Specified Sum Under Lease in Lieu of Royalties not Produced.** Where the terms of a mining lease provided for payment by lessee of royalties to lessors, and that if lessee failed to mine a sufficient amount of ore, which at the rate of royalty stipulated should amount to less than a specified sum. the lessee should pay lessors such sum added to royalty, if any, as should equal said specified sum each year, lessee did not forfeit lease in failing to pay any royalties when he paid said sum for the first year and tendered the same before the end of the second year.

2. ———: **Lessee Required to ''Begin Operations'' Within Certain Time, Held to Have Complied With Terms of Lease.** Preparation of a mine within certain time after date of lease for actual digging. hoisting and disposing of ore, such as preparation of necessary timbers, prospecting, the location of shafts, placing of machinery, is sufficient compliance with the terms of a lease requiring plaintiff to "begin operations" within a certain time.

3. ————: Placing Other Parties in Possession in Violation of Terms of Lease: Measure of Damages. Where during existence of lease lessors had leased mining land to other parties, and placed them in possession, the lessee under prior lease was entitled to recover as damages the difference between the rent as provided for in the lease, and the rental value of the premises, and if the rental value was more than the rent reserved, plaintiff would be entitled to recover such difference.

Appeal from the Circuit Court of Osage County.—*Hon. Ransom A. Breuer*, Judge.

AFFIRMED.

*Frank H. Farris* and *Voshall & Munroe* for respondent.

*J. W. Peters, E. M. Zevely, Charles A. Powers* and *Sparrow & Patterson* for appellants.

ARNOLD, J.—This is an action in damage to recover from defendants for the alleged breach of the terms of a mining lease which plaintiff held on mining property of defendants.

The plaintiff, Cox, is a physician residing at Cuba, Crawford county, Missouri. Defendants are husband and wife residing at Neta, in Osage county.

On March 28, 1916, the defendants leased to plaintiff 240 acres of land to which they held fee title, in Osage county, for the purpose of mining iron ore. The lease provided that defendants reserve the right to use the surface of the land for farming purposes, as set out in the first clause of the lease. The lease also contained the following provisions, among others:

"Second. The party of the second part agrees to pay to the party of the first part, royalty as follows: During one year from the date of this lease the royalty on all iron ore mined and removed from said land shall be twenty cents (20 cents) a long ton of 2240 pounds. After one year from date of this lease the royalty shall

206 M. A.—37

be twenty-five (25) cents a long ton of 2240 pounds on all iron ore mined and removed from said land.

"Third. Such royalty shall be due and paid at the end of each month and shall be for the full amount of mineral shipped from said land during the month immediately preceding the first day of the month in which payment shall become due. At time of making each payment of royalty the party of the second part shall transmit to the party of the first part, an exact statement of the amount of ore shipped from said land for a period for which royalty is then paid. Such royalty shall be paid not later than the fifteenth day of the month following the month royalty is due.

"Fourth. During the term of this lease, if at the end of each year from the date of this lease the party of the second part shall fail, to mine a sufficient amount of ore which at the rate of royalty provided for shall amount to less than three hundred dollars, the party of the second part agrees to pay the party of the first part such sum, added to the royalty as shall amount to three hundred dollars per year.

"Fifth. This lease is granted and accepted upon conditions that if the royalty hereby reserved, or advanced royalty hereby provided for and agreed to be paid, or any part thereof remain unpaid for a period of sixty days, or in case the party of the second part shall fail to keep any of the conditions herein expressed by him to be kept, and such failure shall continue for sixty days after receipt by him of written notice from party of the first part, at their option, to terminate this lease and of, from that date it shall be lawful for the party of the first part, at their opinion to terminate this lease and take possession of said leased premises without any previous process whatever as fully as if no lease had been given and this lease become void.

"Sixth. Said part of the second part to begin operations on said land under this lease within sixty days.

"Tenth. All provisions of this lease shall extend to the heirs and assigns of said parties."

Plaintiff took possession of the property, under the terms of the lease, and began work within thirty days, cribbed up the old shaft on the land, cleaned out the water and fixed it in condition where it could be operated if the quanity of ore could be determined. This was all the work done on the premises, as shown by the testimony, during the year 1916. At about the expiration of the first year of the lease, there having been no ore produced or sold, plaintiff paid defendants $300 in lieu of ore production, as per the terms of the lease.

During the year 1917, the activities on the lease consisted in the sinking by plaintiff of a shaft 4 feet by 6 and 12 feet deep, and the digging of some other prospecting holes in different directions about the mine from 2 to 5 feet deep for the purpose of testing the depth to any ore beds. This latter work was done by a "hand churn drill" and in one or more instances was on locations suggested by defendants.

The evidence tends to show that on July 31, 1917, plaintiff assigned his interest in the lease to one D. J. Gibson of St. Louis for a consideration of $6,000. Gibson never took possession of the land, and the testimony tends to show that defendants knew nothing of this assignment until October 16, 1917. On September 12th, defendants served plaintiff with notice of forfeiture, as follows:

"I hereby notify you that 60 days from this date, September 12, 1917, the mineral lease made March 28, 1916, between J. T. Miller and wife and W. S. Cox will become null and void as you have failed to keep and perform the terms of the lease according to article six in said lease."

(Signed)          J. T. MILLER
CHRISTINE MILLER,
Witness, N. J. ROWAN.

And on November 10, 1917, pursuant to said notice, forfeiture was declared, as follows:

"The sixty days notice delivered to you September 12, 1917, stating failure to comply with all the terms of the mineral lease dated March 28, 1916, has expired, as the terms have not been complied with, the lease from this date is null aid void."

(Signed)     J. T. MILLER
Witness,     N. J. ROWAN.

⸰ Immediately thereafter, defendants placed other parties in physical possession of the mine and property covered by the lease.

Plaintiff, thereafter, and within the second year of the life of his contract, tendered defendants $300, as stipulated in the contract for said year, which tender was refused and at the same time plaintiff was informed by defendants that they had leased the property to other parties who were then in possession.

The testimony tends to show that by reason of the adverse possession of parties under the second lease, plaintiff was prevented from delivering possession to his assignee, Gibson, and claims, that he was, therefore, damaged in the sum of $6,000, the contract price of his sale of interest. Suit was instituted in the circuit court of Osage county to recover. A jury was waived, the cause was heard by the court and resulted in a verdict for plaintiff in the sum of $6,000, from which verdict and judgment defendants appeal.

In determining the nature and scope of the contract entered into between plaintiff and defendants, it is proper to state that it is more than a lease, or mere license to mine for ore; it was a rental agreement, whereby lessee acquired the right to use and occupy the land for mining purposes to the exclusion of all others, upon payment of the stipulated rental value of $300 per year. (See paragraph "Second.")

This construction of a similar lease contract was clearly and succinctly stated by this court in Beatie v. Coal Co., 56 Mo. App. 1. c. 229, as follows: "The contract between Beatie and the coal company is something more than the mere grant of a mining license. It was

a renting agreement, whereby the coal company acquired the right to use and occupy, to the exclusion of all others, certain lands belonging to Beatie." This case is "on all fours" with the case at bar, excepting in this, that Beatie sued the coal company for rents, as per stipulations in the contract or lease, and prevailed in his suit. In the case at bar, defendants base their contention upon a construction of the lease to the effect that "there is no denial of the fact that the lease, subject to its being declared invalid for want of mutuality, conferred upon respondent the right to enter upon the leased premises for the purpose of mining, producing and disposing of iron ore."

This position it not well taken in view of the provisions of section "Four" of the lease. The contract is very clear that in lieu of royalty each year, there shall be paid, during the terms of the lease $300, or the difference between said $300 and the total amount of the royalty for the particular year, if the royalty amounts to less than $300. The conclusion is, therefore, inevitable, that plaintiff did not forfeit, under any of the sections of the contract. He paid the $300 for the first year, and tendered $300 before the end of the second year, not having produced any royalties.

We shall now consider section "Six" of the lease which required plaintiff to "begin operations" within sixty days. It is well to inquire what is the legal application of beginning "operations." There are many things to be done relative to a mine in preparation for the actual digging, hoisting and disposing of ore, such as the preparation of necessary timbers, prospecting, the location of shafts, placing of machinery, etc. The doing of such things, the courts have held to be "beginning operations," and we are of opinion that plaintiff actually "began operations" as provided in the convenant.

This being true, defendant acted without right in forfeiting the lease under section six thereof, the plaintiff having done considerable preliminary work during

the first year and having paid the rental stipulated. Likewise, in the second year, plaintiff for himself, and jointly with defendants, did considerable additional work in sinking a shaft and drilling prospect holes, and in addition thereto, tendered the $300 rental for that year.

It is undisputed that plaintiff had contracted to sell his interest in the lease for the sum of $6,000, but was unable to consummate the deal because of the fact that defendants had leased the mine lands to other parties and placed the later lessees in actual possession thereof, and we must hold that plaintiff was thereby damaged.

There remains to be considered only the measure of damages. We quote from a rule announced by the Supreme Court in Hughes v. Hood, 50 Mo. 350, and reaffirmed in a line of decisions: "The true rule of damages in this case was the difference between the rent as provided for in the lease and the rental value of the premises. If the rental value was more than the rent reserved, the plaintiffs would be entitled to recover such difference." [Jenkins v. Womach, 143 Mo. App. 410.]

In the case at bar we find no reversible error and the verdict was for the right party The plaintiff has agreed to a reduction of the amount of the judgment by the sum of $2700, being the amount reserved, and the judgment is hereby affirmed in the sum of $3300. All concur.