ROBINSON *v.* GORDON OIL CO.

1. MINES AND MINERALS—OIL AND GAS LEASES—COMPLYING WITH
LEASE IN BEGINNING DRILLING.

Lessee, by locating site for oil well, making contract for drilling,
hauling necessary amount of sand and gravel, digging slush pit,
erecting derrick and rig, and installing some machinery, suffi-
ciently complied with provisions of lease requiring him to do
some "actual work in connection with drilling" by certain
date, even if said provision be construed to require lessee to
begin drilling on or before said date.

2. SAME—DILIGENCE REQUIRED OF LESSEE.

If lessee, in drilling oil well, acted as ordinarily prudent person
would, under circumstances, he has not been lacking in dili-
gence required of him.

3. SAME—COMPLIANCE WITH LEASE—ESCROWS.

Lessee *held*, to have complied with terms of lease requiring him
to continue work of drilling oil well with diligence and dis-
patch, entitling him to delivery of lease placed in escrow,
although there was delay of eight weeks because of financial
difficulties due to business depression, where he was working
hard to secure financial assistance, and finally succeeded.

Appeal from Midland; Hart (Ray), J.    Sub-
mitted April 20, 1932.   (Docket No. 170, Calendar
No. 36,466.)   Decided June 6, 1932.

Bill by William A. Robinson against Gordon Oil
Company, an Ohio corporation, and others to estab-
lish validity of oil and gas leases, for accounting,
and other relief.  Bill dismissed.  Plaintiff appeals.
Reversed.

*Charles H. Goggin* and *James E. Ryan*, for plain-
tiff.

*F. H. Dodds* and *C. A. Fisher,* for defendants Gordon Oil Company and Mason.

*Chester E. Morris,* for defendants Skinner.

McDonald, J. This bill was filed to secure the cancellation of two oil leases given to the Gordon Oil Company by Noah J. Skinner and Clarinda E. Skinner, his wife, on land belonging to them in the county of Midland, Michigan; to establish the validity of two former leases on the same property given by the Skinners to the plaintiff; to restrain the defendants from interfering with the plaintiff in the development of oil under his leases; and for an accounting as to the oil taken from the premises by the defendants.

The defendants Noah J. Skinner and wife are the owners of a 60-acre tract of land and an 80-acre tract about one mile distant from each other in the township of Greendale in Midland county. On October 2, 1930, they executed two leases to the plaintiff covering both tracts for the purpose of developing the production of oil and other natural products. These leases were not delivered to the plaintiff but were placed in escrow with the Exchange Savings Bank of Mt. Pleasant. The escrow agreement provided:

"(1) In the case of the lease on the 60 acres, you will deliver it to the lessee thereof, W. A. Robinson, or to his heirs, administrators, or successors, when well to be drilled as provided therein (see paragraph 11 of the lease) has attained a depth of 500 feet, provided actual work in connection with the drilling of said well has been commenced on or before December 1, 1930. In the event said actual work has not been commenced on or before that date, you will forthwith deliver said lease to the lessors, Noah J. Skinner and Clarinda E. Skinner.

"(2)   In the case of the lease on the 80 acres, you will deliver it to the lessee thereof, W. A. Robinson, or to his heirs, administrators, or successors, when well to be drilled as provided therein (see paragraph 11 of the lease) has attained a depth of 500 feet, provided actual work in connection with the drilling of said well has been commenced on or before January 15, 1931. In the event said actual work has not been commenced on or before that date, you will forthwith deliver said lease to the lessors, Noah J. Skinner and Clarinda E. Skinner."

Paragraph 11 of the lease referred to in the escrow agreement provided that, as to the 60-acre tract, "actual work in connection with the drilling of such well shall be commenced on or before December 1, 1930, and continued thereafter with reasonable dispatch and diligence," etc.

There was a similar provision in regard to the 80-acre tract except that actual work on that tract was to commence on or before January 15, 1931.

The leases were never delivered to the plaintiff. The defendants claim that he failed to comply with the terms of the escrow agreement and lease; that he did not commence actual work on or before December 1, 1930; and did not exercise reasonable diligence thereafter in endeavoring to carry out his contract.

Acting on this assumption, on January 26, 1931, the defendants Noah J. Skinner and Clarinda E. Skinner gave the Gordon Oil Company leases on both tracts. Except for a change in the names of the parties, these leases contained the same provisions as the leases to the plaintiff. The Gordon Oil Company began operation under their leases and in time produced a good well. Claiming that he had been wrongfully prevented from carrying on his operations, the plaintiff brought this suit. On the hearing

the trial court found that he had not complied with the conditions of the escrow agreements and was not entitled to a delivery of the leases; that he had no leases binding on the Skinners; and that the leases they made with the Gordon Oil Company were valid. From a decree dismissing the bill the plaintiff has brought this appeal.

Our discussion of the case will relate entirely to the lease on the 60-acre tract. No work on the 80 acres was begun on or before the 15th of January, 1931, as required, and therefore plaintiff is not entitled to a delivery of that lease and has no rights therein.

In respect to the other lease two questions are involved: First, did the plaintiff begin actual work in connection with drilling the well on or before December 1, 1930; and second, if he did so, did he thereafter continue the work with reasonable dispatch and diligence?

The record shows that before December 1, 1930, the plaintiff and those working under his direction had located the site for the well, made a contract for the drilling, hauled the necessary amount of sand and gravel onto the location, dug a slush pit, erected a derrick and rig, and installed some machinery. Was this a sufficient compliance with the lease which provided "that actual work in connection with the drilling of such well shall be commenced on or before December 1, 1930?"

In *Terry* v. *Texas Co.* (Tex. Civ. App.), 228 S. W. 1019, the lease required the lessee to "commence to drill a test well for oil within eight months." The court held, quoting from the syllabus:

"Lessee, by placing timbers for erection of derrick and machinery, including boiler, on the ground where oil well was to be drilled, complied with pro-

vision requiring him to 'commence to drill' well within a certain period; the word 'commence' being defined as 'to perform the first act of.' ''

In the instant case the lease did not require the plaintiff ''to commence to drill'' by a certain time as the lease did in *Terry* v. *Texas Co., supra.* It required him to do some ''actual work in connection with the drilling by December 1, 1930.'' Language substantially the same has been construed in other cases where the requirement of the lease was that lessee should ''begin operations'' in a definite time. For instance, in *Cox* v. *Miller,* 206 Mo. App. 576 (227 S. W. 652), a mining lease required the lessee ''to begin operations on said land under this lease within 60 days.'' It was held that preparing the necessary timbers, prospecting, locating shafts, and placing machinery was a sufficient compliance with the terms of the lease.

In *Fleming Oil & Gas Co.* v. *South Penn Co.,* 37 W. Va. 645 (17 S. E. 203), the language of the lease was ''to commence operations for a test well within one year,'' etc. It was held that locating the well, cutting down timbers for constructing a derrick, making a contract with a party for drilling, and ordering machinery is ''commencing operations'' for a test well, though neither the timber nor machinery was hauled to the location during the time specified because of the condition of the roads.

In *Hudspeth* v. *Producers' Oil Co.,* 134 La. 1013 (64 South. 891), the lease required the lessee ''to commence operations on the tract by drilling, boring or mining for oil within 24 months,'' etc. Within the time specified the lessee cleared 12 acres of land and sawed timber for the construction of the derricks. It was held that this work was a commence-

ment of operations by "drilling, boring and mining" within the meaning of the lease.

The theory of these cases is that the work done in preparation for drilling a well is a necessary part of the drilling. So in the instant case, assuming but not holding that the lease required the plaintiff to begin drilling on or before December 1, 1930, he satisfied that requirement of the lease in the preparations he made for drilling. They were a necessary part of the drilling.

Having complied with the provisions of the lease and the escrow agreement in regard to the commencement of actual work in the time specified, did he thereafter continue it with reasonable diligence and dispatch?

The question is, What constitutes reasonable diligence and dispatch?

In *Maverick Oil & Gas Co.* v. *Howell,* 193 Ky. 433, 440 (237 S. W. 40, 43), it was said:

"In determining what is a reasonable time, every case must be controlled by the facts proved in that particular case. Where it appears that the holder of a lease is holding it purely for speculative purposes, the time for development after notice must necessarily be shorter than where it is shown that the holder in good faith intends to develop but is temporarily delayed in carrying out his intentions."

In *Prince* v. *Standard Oil Co. of Louisiana,* 147 La. 283 (84 South. 657), the defendant claimed that the question of diligence must be determined by the lessee whose decision if made honestly and in good faith was conclusive. But the court said:

"We think the better rule of interpretation in a case where the object of the operation is to obtain a benefit for both lessor and lessee is that neither, in the absence of an express stipulation, is the arbiter

of the extent of diligence required; both are bound by what would be reasonably expected of operators of ordinary prudence, having regard to the interests of both.''

In Summers on Oil and Gas, § 136, p. 436, the rule as to diligence is stated as follows:

''The general rule is that if the lessee, in drilling wells for the development of the demised land, has in good faith and with due regard to the interest of the lessor, as well as his own, taking into consideration all the surrounding conditions and circumstances, acted as an ordinarily prudent person, experienced in the business of production of oil and gas, would have acted, he has not been lacking in the diligence required of him.''

And in Thornton on Oil and Gas (5th Ed.), § 167, p. 294, it is said:

''Whatever, in the circumstances, would be reasonably expected of operators of ordinary prudence, having regard to the interests of both the lessor and lessee, is what is required.''

As to what will constitute an excuse for delay, it has been said:

''Adverse weather conditions and stringency in the money markets have been held valid excuses for delay in development.''    Thornton, Oil and Gas (5th Ed.), § 168, p. 295.    See, also, *Mid-South Oil Co.* v. *Jaynes,* 208 Ky. 483 (271 S. W. 553); *Pennagrade Oil & Gas Co.* v. *Martin,* 211 Ky. 162 (277 S. W. 302).

In the latter case it was said:

''The delay was during the world war, and, therefore at a time when it was very difficult, if not impossible, to raise money for private enterprise. Notwithstanding this fact, the lessees were constantly engaged in an effort to raise money for such pur-

poses. These efforts finally culminated in a contract for the sale of the gas to the Louisville Gas & Electric Company, which involved the construction of approximately 30 miles of pipe line before the gas could be marketed. In view of all the circumstances, we are constrained to hold that the delay in marketing did not operate as an abandonment of the lease.''

In that case there was a delay of two years and six months. In the instant case there was a delay of approximately eight weeks.

In *Ross* v. *Sheldon* (Ky.), 119 S. W. 225, the lessee sought to excuse a charge of lack of diligence on the ground of sickness and stringency in the money market. Of this the court said:

''Whether or not these misfortunes would be sufficient to legally excuse the lessees from a performance of the contract, we express no opinion; but we think they furnish reasons why they were not as diligent as they should have been, and in an action to cancel the contract are entitled to weight.''

With these principles in mind, we will consider the question of diligence in the instant case. There was a delay of eight weeks due to the difficulty which the plaintiff experienced in financing the operations because of the business depression. But on January 29, 1931, he had succeeded in completing his financial arrangements with the S. R. Morgan investment bankers of Chicago. On January 26, 1931, Mr. Skinner secretly executed leases of the same property and on the same terms to the defendant Gordon Oil Company. The leases were made to this company when it was under contract with the plaintiff to drill the well for him. The defendant Mason was the company's agent and conducted all of the negotiations both in securing the drilling contract and the leases from Skinner. During the time that he was secretly negotiating with Mr. Skinner to secure leases for his

company, he knew that the plaintiff was succeeding with his arrangements for financial assistance and that he expected Mason's company to do the drilling according to contract. Without relating them in detail, we think the methods used to secure the leases were unfair and closely resemble fraud, but we do not base decision to cancel them on that ground.

The plaintiff acted in good faith. Of that there is no question. He was not holding the land for speculative purposes. He intended to drill the well and so informed the lessors, who knew that he was working hard to finance the operations. The well was to be drilled in what is known as "wild cat territory." There was no near-by development. The nearest well was more than a mile away, so there was no danger of injury to the lessor's oil prospects by drainage from other operations.

In view of these facts, we cannot say that the plaintiff acted without due regard to the lessor's interest or that there was a lack of reasonable diligence in prosecuting the work. A consideration of all the facts and circumstances appearing in the record shows that the plaintiff has not had a square deal.

The question of an accounting we leave undetermined, because there is no evidence from which a determination could be made.

As it appears that the plaintiff has complied with the terms and provisions of the lease and escrow agreement, he is entitled to the relief prayed for in his bill. The decree of the trial court is reversed, and one will be entered in this court in accordance with this opinion.

The plaintiff is awarded costs.

CLARK, C. J., and POTTER, SHARPE, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.