**Edgar LITTON and Deloris Litton, Movants,**

v.

**MOUNTAINEER LAND COMPANY, Respondent.**

No. 89–SC–639–DG.

Supreme Court of Kentucky.

Oct. 18, 1990.

Ransome C. Porter, Inez, for movants.

Karen J. Greenwell, Jeff A. Woods, Wyatt, Tarrant & Combs, Lexington, for respondent.

GANT, Justice.

In 1975, respondent mining company became interested in surface mining an area in Martin County known as the "Davisport" area. Because the procedures employed by Mountaineer are typical of the procedures utilized in this type of operation, we will set them out in some detail.

Through the use of preliminary core drilling to locate the perimeters of the coal, Mountaineer defined the area to be mined and began to secure leases and purchase surface rights in order to mine this area as a unit. It acquired some 24 leases and 20 deeds, included among which leases was a lease on the 35–acre tract belonging to the movants herein. Obviously, this tract was only a small portion of the overall unit to be mined. The lease with the movants, dated April 13, 1982, was a three-year lease. In Paragraph 6 of this lease, it was provided that the lease was for a term of five years, "with the right and option on behalf of the company to extend this lease from year to year thereafter until all of the mineable and merchantable coal has been removed from the property."

In this particular lease a handwritten insert was added to Paragraph 6 which read:

Notwithstanding anything contained herein, it is agreed between the parties hereto that if mining operations have not commenced within three years from the date hereof, Lessor may declare this lease void by giving written notice to the Company. It is also agreed that the total term of this lease shall not exceed seven (7) years.

After the leases and deeds had been obtained, Mountaineer undertook additional and extensive core drillings to determine the thickness, depth and quality of the coal throughout the "Davisport" area, expending some $182,755, of which $16,936 was expended on the tract of the movants. Mountaineer further secured permits for all the properties in the entire area, which cost the respondent some $132,040, of

which $8,296 was attributable to the movants' tract. Mountaineer constructed haul roads for the area, several bridges (including a required low water concrete bridge), and constructed silt dams. All this was necessary to remove the coal from the entire property, including the movants' property. Mountaineer had a total land investment in the "Davisport" project of $614,594.

Respondent then began its mining operation by removing coal from the first property serviceable by the haul road and progressed on a tract-by-tract basis until all the area was mined. Movants acknowledged that they at all times knew that their tract would be mined in conjunction with the other tracts.

On April 13, 1985, movants notified respondent that they did not consider that mining operations had commenced and that they were declaring the lease void under the provisions of the handwritten addendum herein set out, the three-year period from the original date of the lease having expired. Movants then brought this action in trespass, as respondents went on the movants' property within a few weeks after April 13, 1985, and removed all the mineable coal. Under the terms of the lease, respondents tendered to the movants checks approximating $50,000, which checks were refused by the movants. At the conclusion of the trial, the trial court denied a motion for directed verdict by the respondent and submitted the case to a jury. The jury found damages in trespass to the movants of $100,000. The Court of Appeals reversed, holding that the motion for directed verdict should have been sustained. We agree, and affirm the Court of Appeals.

The single question to be answered in this case is whether the procedure followed by the respondent constituted "mining operations" within the meaning of the lease with the movants, it being admitted that, with the exception of those steps hereinabove outlined, no actual removal of coal had occurred directly upon the 35–acre tract of the movants.

This is a case of first impression in Kentucky. We have some analogous precedent in the cases of oil and gas leases. As stated in Summers, *The Law of Oil and Gas*, Vol. 2, § 349.

The general rule seems to be that actual drilling is unnecessary, but that the location of wells, hauling lumber on the premises, erection of derricks, providing a water supply, moving machinery on the premises and similar acts preliminary to the beginning of the actual work of drilling, when performed with the bona fide intention to proceed thereafter with diligence toward the completion of the well, constitute a commencement or beginning of a well or drilling operations within the meaning of this clause of the lease. If the lessee has performed such preliminary acts within the time limited, and has thereafter actually proceeded with the drilling to completion of a well, the intent with which he did the preliminary acts is unquestionable, and the court may rule as a matter of law that the well was commenced within the time specified by the lease.

As set out in the opinion of the Court of Appeals, Kentucky has followed the general rule relating to oil and gas leases since *Durbin v. Osborne*, 292 Ky. 464, 166 S.W.2d 841 (1942). In dealing with mining operations, other jurisdictions have applied the general standard outlined in the quoted paragraph from Summers, such as *Cypress Creek Coal Co. v. Booneville Mining Co.*, 194 Ind. 187, 142 N.E. 645 (1924); *Cox v. Miller*, 206 Mo.App. 576, 227 S.W. 652 (1921), and *Walton v. Zatkoff*, 372 Mich. 491, 127 N.W.2d 365 (1964).

We are of the opinion that mining leases present an even more compelling rationale for holding that the actions of the respondent herein constituted "mining operations" within the phraseology of the lease. By nature, surface mining requires more than mere removal of coal, especially in a mountainous area. It is customarily accomplished by co-ordinating many tracts of land into one operation, and by construc-

**862**

tion of haul roads, silt dams, and bridges. It is further accomplished by moving from one tract to another, carrying the overburden from tract to tract, and crossing the adjacent tracts with the coal once it has been removed. Without such a system, the mining of this small 35-acre tract would have been impossible. We note also that the removal of the coal from the movants' land was accomplished in a reasonable time and reasonable manner, and it is our opinion that the lower court erred in its failure to sustain the motion for a directed verdict.

The opinion of the Court of Appeals is affirmed.

STEPHENS, C.J., and LEIBSON and WINTERSHEIMER, JJ., concur.

COMBS, J., files a dissenting opinion in which LAMBERT and VANCE, JJ., join.

COMBS, Justice, dissenting.

I respectfully dissent. The lease agreement entered into by the parties was clear, plain and unambiguous. It accurately described the property to which its terms would apply. The deadline for the commencement of mining operations on the leased premises was handwritten, which fact indicates that this condition of the agreement was specifically considered and negotiated by the parties.

The majority opinion blatantly ignores the plain wording of the agreement and the manifest intention of the parties. Today's result not only impairs the obligation of contracts, but also endorses the taking of private property for private use, by means of the judicial process, all in contravention of Section 2 and the spirit of Section 19 of the Constitution of Kentucky and the Fourteenth Amendment of the Constitution of the United States.

LAMBERT and VANCE, JJ., join in this dissenting opinion.