RENDERED: MARCH 29, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0582-MR

CHARLES W. HYDEN; EAST
KENTUCKY MINING, LLC; HYDEN
MANAGEMENT, LLC; AND
RICHARD M. YOUNG                                                    APPELLANTS


                    APPEAL FROM LAWRENCE CIRCUIT COURT
v.                  HONORABLE JOHN DAVID PRESTON, JUDGE
                    ACTION NO. 22-CI-00045


CYRUS AND SONS FARMS, LLC
AND LARRY JOSEPH CYRUS,
EXECUTOR OF THE ESTATE OF
JAMES R. CYRUS                                                       APPELLEES


                              OPINION
                             AFFIRMING

                          ** ** ** ** **

BEFORE: ACREE, COMBS, AND ECKERLE, JUDGES.

ACREE, JUDGE: Appellants appeal the Lawrence Circuit Court's May 3, 2022

Order granting summary judgment in favor of Appellees. After a thorough review,

we affirm.

On June 3, 2019, the parties entered into two identical leases whereby Appellees gave Appellants the right to mine coal from certain lands owned by Appellees. Appellant Richard Young drafted both contracts.

The lease contains a "Term" clause, which states: "This [lease] shall be and extend for an Initial Term of TWO years, beginning on and including the date above and if mining has commenced, for so long as coal is being mined." (Record (R.) at 5). Additionally, the contract states:

> In connection with it's [sic] mining operations hereunder, Lessee shall use its best efforts to comply with all applicable law[s], rules, regulations, and orders which are currently in force or which may be hereafter enacted by the United States of America, the Commonwealth of Kentucky, or any other applicable governmental authority.

(R. at 6.) Further, "Lessee covenants and agrees to diligently develop and mine all of he [sic] mineable and merchantable coal from he [sic] Leased Premises." (R. at 6.) And, pursuant to the contract's "Force Majorie [sic]" clause, which we construe as a Force Majeure clause, "In the event the [sic] of an occurrence of an event/s which either prohibits the sale of coal or the sale of the coal at a reasonable profit, [Appellants] reserve[] the right to 'idle' the operations until such time as it can be reasonably determined that the prohibitive event/s are removed." (R. at 9.)

After entering into this deal, Appellants began satisfying all regulatory requirements prior to mining coal. Appellants filed an application with the Kentucky Energy and Environment Cabinet (Cabinet), which required a $750

filing fee, for mining approval. Appellants also initiated two studies on the leased premises required by state and federal regulations. The first study, an archeological study, took place over the course of a few weeks and cost Appellants $8,500 to complete. The second study was a water study required by the Cabinet. However, prior to disturbing the leased land, Appellants needed the Cabinet to approve its filed application.

Although Appellants acted in a timely fashion, they did not receive this permit until July 2021, one month after the initial term on the lease agreement expired. Thereafter, Appellees alleged the contract expired by its own terms because Appellants failed to mine coal from the property. In response, Appellees told Appellants they would be unable to mine the land. Looking to the record, there exists no evidence demonstrating the Appellants moved machinery onto the leased lands, nor any evidence showing Appellants mined coal.

Interestingly, Appellees initiated this lawsuit, asking the Lawrence Circuit Court to declare the lease null and void, though, this complaint appears to request relief the circuit court cannot grant. Accompanying its answer, Appellants alleged a counterclaim that Appellees breached the terms of the lease by their actions. Appellees moved for summary judgment on Appellants' counterclaim, and the circuit court granted this motion. This appeal follows.

A circuit court properly grants summary judgment "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[1] 56.03. "An appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exist[ed] and the moving party was entitled to judgment as a matter of law." *Feltner v. PJ Operations, LLC*, 568 S.W.3d 1, 3 (Ky. App. 2018). Thus, appellate courts review a circuit court's summary judgment *de novo*. *Cmty. Fin. Servs. Bank v. Stamper*, 586 S.W.3d 737, 741 (Ky. 2019).

However, "where the movant shows that the adverse party could not prevail under any circumstances" summary judgment is appropriate. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). "[A] party opposing a properly supported summary judgment motion cannot defeat that motion without presenting at least some affirmative evidence demonstrating that there is a genuine issue of material fact requiring trial." *Hubble v. Johnson*, 841 S.W.2d 169, 171 (Ky. 1992) (citing *Steelvest*, 807 S.W.2d at 480). Crucially here, a court must reasonably construe all facts in the light most favorable to the non-moving party. *Schmidt v. Leppert*, 214 S.W.3d 309, 311 (Ky. 2007).

---

[1] Kentucky Rules of Civil Procedure.

Pursuant to KRS[2] 350.060: "No person shall engage in surface coal mining and reclamation operations without having first obtained from the cabinet a permit designating the area of land affected by the operation." KRS 350.060(1)(a). In relevant part, Kentucky defines surface coal mining operations as:

> mean[ing] activities conducted on the surface of lands in connection with a surface coal mine and surface impacts incident to an underground coal mine. The activities shall include excavation for the purpose of obtaining coal, including such common methods as contour, strip, auger, extended depth secondary recovery systems, mountaintop removal, box cut, open pit, and area mining, the use of explosives and blasting, and in situ distillation or retorting, leaching, or other chemical or physical processing, and cleaning, concentrating, or other processing or preparation, and the loading of coal at or near the mine site.

KRS 350.010(1).

On appeal, Appellees claim summary judgment is appropriate because the lease expired by its own terms and cites *North American Refractories Company v. Jacobs*, 324 S.W.2d 495 (Ky. 1959), to support its claim. A review of *Jacobs* shows it has little applicability to the case *sub judice*. In *Jacobs*, the parties entered into a lease to mine clay from leased lands and, at the expiration of the lease, North American Refractories continued to conduct "operations" on the leased land, none of which constituted mining clay. *Jacobs*, 324 S.W.2d at 496-97.

---

[2] Kentucky Revised Statutes.

Because North American Refractories failed to literally mine clay, the court determined the lease at issue in that appeal did not renew. *Id.* at 497. Nevertheless, setting aside the fact that coal mining is far more regulated than clay mining, in the Kentucky Supreme Court's modern jurisprudence, the Court has expanded what mining means, beyond the mere act of mining coal. *See Litton v. Mountaineer Land Co.*, 796 S.W.2d 860 (Ky. 1990).

In *Litton*, the Kentucky Supreme Court said: "By nature, surface mining requires more than mere removal of coal, especially in a mountainous area." *Id.* at 861. In *Litton*, the parties signed a lease which stated: "it is agreed between the parties hereto that if mining operations have not commenced within three years from the date hereof, Lessor may declare this lease void by giving written notice to the Company." *Id.* The Littons' land was a small fraction of the total lands Mountaineer Land Co. leased or bought for their mining operations, as the company ultimately acquired 24 leases and 20 deeds. *Id.* at 860. The company planned on mining tracts of land closest to the only nearby serviceable haul road and thereafter move tract-by-tract until all of the area was mined. *Id.* at 861. The Littons' land was not near this road, and after three years, Mountaineer Land Co. failed to actually mine coal from the Littons' land.

At issue in *Litton* was whether physical acts on lands, that prepare lands to be mined, constituted "mining operations." *Id.* at 860. The Kentucky

-6-

Supreme Court, adopting the standard used in the context of oil and gas mining, determined mining operations included physical acts done prior to coal being removed. *Id.* at 861-62. The general principles of oil and gas lease, which are to be applied to coal leases, are that:

> The general rule seems to be that actual drilling is unnecessary, but that the location of wells, hauling lumber on the premises, erection of derricks, providing a water supply, moving machinery on the premises and similar acts preliminary to the beginning of the actual work of drilling, when performed with the bona fide intention to proceed thereafter with diligence toward the completion of the well, constitute a commencement or beginning of a well or drilling operations within the meaning of this clause of the lease. If the lessee has performed such preliminary acts within the time limited, and has thereafter actually proceeded with the drilling to completion of a well, the intent with which he did the preliminary acts is unquestionable, and the court may rule as a matter of law that the well was commenced within the time specified by the lease.

*Id.* at 861 (citing Summers, *The Law of Oil and Gas*, Vol. 2, § 349). Thus, applying this general principle, any physical acts taken on the land in preparation for coal mining, constitute "mining."

Appellants argue summary judgment is inappropriate because, although they failed to physically touch the land, they engaged in the mining process by diligently seeking to comply with all laws and regulations concerning coal mining. However, nothing in the lease, nor anything in KRS 350.010, includes the permit process as a part of mining or mining operations. *See* KRS

350.010(1), (6).  This court rejected the same argument in *D & H Coal Company of Laurel County, Inc. v. Smith*, No. 2002-CA-1938-MR, 2004 WL 691627, at \*1 (Ky. App. Apr. 2, 2004).  We reject it again today.

Additionally, Appellants argue the lease's Force Majeure clause allowed them to idle coal mining because the COVID-19 pandemic prevented them from obtaining their permits in a timely fashion.  While the Force Majeure clause does permit Appellants to idle coal mining if coal cannot be sold for a reasonable profit, nothing in this clause can be construed as permitting them to idle operations as they wait for their permits.  Appellants fail to point to any evidence in the record showing the pandemic caused the price of coal to be unreasonable so that it could not be sold for a reasonable profit.

Because the record reflects no evidence Appellants engaged in mining, per the terms of their lease, the Lawrence Circuit Court did not err when it granted summary judgment in favor of Appellees.

Accordingly, we affirm.

ALL CONCUR.


BRIEFS FOR APPELLANTS:              BRIEF FOR APPELLEES:

James P. Pruitt, Jr.                Eldred E. Adams, Jr.
Pikeville, Kentucky                 Louisa, Kentucky