## CHARLESTON.

FLEMING OIL & GAS Co. *v.* So. PENN OIL Co. *et al.*

Submitted January 23, 1893.—Decided March 22, 1893.

1. LEASE—OIL LEASE—FORFEITURE.

Where a lease for oil and gas purposes contains a covenant that the lessee shall commence operations for a test-well within one year from the date thereof at some point in the district, in which the leased premises are located, and complete said well in eighteen months after its commencement; and before the expiration of a year from the date of said lease said test-well is located by surveying and leveling; the timbers which are afterwards used in constructing the derrick at said location are cut down and hewn; a contract is made with a party for drilling the well; and the machinery is ordered to be hauled to said location but neither said timber nor machinery is hauled to said location within the year,

by reason of the impassable condition of the roads; said well is, however, completed in less than eighteen months after the date of said laese—the lease is not liable to forfeiture on the ground that operations were not commenced within a year from the date thereof under said circumstances.

2. Judgment—Demurrer.

A judgment on a verdict virtually overrules all demurrers to the declaration.

3. Ejectment—Declaration—Description.

Before the plaintiff in ejectment can recover, he must claim the land in his declaration by its exterior boundaries, and identify it to that extent. If the defendant is entitled to exceptions or reservations, he may show the fact as a matter of defence.

J. Bassell, W. S. Haymond and U. N. Arnett, Jr. for plaintiff in error cited 2 Munf. 518; 11 W. Va. 94.

H. McSweeney, of counsel for plaintiff in error:

I.—*Operations were commenced as required by lease.*—30 W. Va. 176; 57 Pa. St. 65; 61 Pa. St. 107; 51 Pa. St. 233; 12 S. & R. 190; 32 Pa. St. 267; 8 S. & R. 172; Sto. Eq. Juris. § 1319.

II.—*No ground of forfeiture existed if well was completed within thirty months from date of lease.*—61 Pa. St. 107; 30 W. Va. 176; 51 Pa. St. 283; 1 Cas. 397; 57 Pa. St. 65; Sto. Eq. Juris. § 1319; 138 Pa. St. 249; 130 Pa. St. 254; Id. 222; 34 W. Va. 385; Id. 49; 30 Pa. St. 142; 96 Pa. St. 307.

III.—*Plaintiff has no rights in equities superior to those of the lessor.*

IV.—*Lower court erred in its instructions.*

W. S. Meredith and H. M. Russell for defendant in error:

I.—*It is proper to show title from a common source.*—30 W. Va. 505; 32 W. Va. 600.

II.—*An oil lease is forfeited by the failure to comply with its provisions.*—34 W. Va. 49.

III.—*The lease to appellee was an unequivocal declaration of forfeiture.*—34 W. Va. 49; 34 W. Va. 375.

IV.—*The reservation of an undefined territory in which no well was to be drilled did not prevent a recovery.*—130 Pa. St. 235.

V.—*Forfeitures for failure to develop land are not looked upon with disfavor.*—96 Pa. St. 235.

VI.—*It was the duty of the court to interpret the meaning of the lease.*—1 Greenl. Ev. § 277.

VII.—*The demurrer to the declaration was overruled by the judgment on the verdict.*—1 W. Va. 219. *The declaration being good, the failure to pass on the demurrer was not error for which the judgment will be reversed.*—11 W. Va. 94. *The declaration sufficiently describes the premises.*—Code, c. 90, s. 8; 17 W. Va. 1, 11; Hutch. Land Tit. § 464.

ENGLISH, PRESIDENT:

On the 22d day of February, 1889, T. M. Jackson & Co., obtained a lease from one David Jones of a tract of land containing about one hundred and forty acres, situated in Pawpaw district, in Marion county, W. Va., for oil and gas purposes, which lease was recorded in said county on the 30th day of May, 1889, and was afterwards, on the 15th day of September, 1890, assigned and conveyed by said T. M. Jackson & Co., to the South Penn Oil Company. Said lease contained the following covenant:

"The party of the second part covenants to commence operations for a test well within one year from the date hereof, at some point in said district of Pawpaw, Marion county, and complete the same within eighteen months from said commencement, provided that unavoidable delays occasioned by mishaps in drilling shall not cause a forfeiture of this lease; and, in case said party of the second part fails to so commence and complete said test well, the lease shall be forfeited and void; and, in case said test well was a success, said party of the second part should commence a well on said property within two years after said test well is utilized, and complete the same in one year from the commencement thereof; and, if said party of the second part failed so to do, said lease should be forfeited and void, provided that loss of time spent in the recovery of tools lost in drilling, or unavoidable delays occasioned by any mishaps in connection with drilling, shall not work a forfeiture of the lease."

Under the provisions of this lease, the said T. M. Jack-

son & Co., made preliminary surveys, in the fall of 1889, for the purpose of ascertaining the location of the oil belt with reference to the P. W. Youst farm ; and on the 30th day of January, 1890, the point at which the test well was afterwards drilled was located by him, and the spot pointed out to said P. W. Youst. A contract was made with one Ira DeWitt, in the fall of 1889, for the drilling of said well, by the terms of which work was to be commenced on the 31st day of January, 1890. In pursuance of said contract, said DeWitt had the timbers for the derrick which were afterwards used by him in drilling said test well cut and hewn on said Youst farm, between the 1st and the 6th of February, 1890 ; and in the latter part of January, 1890, the said De Witt contracted with one J. H. Barry to haul the machinery which was afterwards used in drilling said test well to the P. W. Youst farm, which hauling was delayed for some time by reason of the impassable condition of the roads in that locality. In execution of said contract, the said De Witt subsequently got the material and machinery upon the locality which had been selected, erected the derrick, and completed said well on the 21st day of August, 1890. A second well was commenced on said David Jones farm, on the lands described in said lease, on the 25th day of September, 1890, and was completed on the 6th day of January, 1891.

On the 28th day of February, 1890, the said David Jones leased the same tract of land to the Fleming Oil & Gas Company, of Wheeling, W. Va., for the purpose and with the exclusive right of drilling and operating for petroleum and gas ; but the said lease on its face contained a covenant that "said David Jones was to be held harmless from a lease made to T. M. Jackson & Co., which expired February 22, 1890."

At the February rules, 1891, for the Circuit Court of Marion county, the Fleming Oil & Gas Company filed its declaration in ejectment against the South Penn Oil Company and David Jones for the purpose of recovering the possession of said leased premises. The defendants appeared at the February rules, 1891, and demurred to the plaintiff's declaration, and moved to quash the notice given

the said defendants, which demurrer and motion, being considered by the court, were overruled. The defendants pleaded not guilty, and issue was joined thereon, and the case was submitted to a jury. Five instructions were asked by the plaintiff, and four by the defendant company, which instructions the court refused to give, the defendant company objecting to those asked by the plaintiff, and the plaintiff objecting to those asked by the defendant; and thereupon the court, of its own motion, gave the jury two instructions, which second instruction given by the court to the jury was objected to by the defendant the South Penn Oil Company.

The instructions asked for by defendant, and those given by the court, are in the words and figures, following:

"Instruction No. 1 by defendant:

"If the jury find from the evidence that T. M. Jackson, I. C. White, and C. L. Smith, the lessees of the defendant David Jones, by themselves, their agents or assigns, prior to the 22d day of February, 1890, located an oil well, or the point for drilling an oil well, on the land of P. W. Youst, in Pawpaw district, Marion county, W. Va., and also, prior to said date, cut and prepared upon the land of said Youst the timber necessary for the construction of the rig or the foundation or other parts of the derrick to be erected at the point so located for the purpose of drilling or boring an oil well at said point, and that subsequently, and within eighteen months from the time said preparations were made, a derrick was 'erected, and an oil well drilled to completion at said point, said actions on the part of said Jackson, White, and Smith, their agents or assigns, were sufficient to prevent a forfeiture of such lease, under the clause therein which provides 'that in case operations for a test well should not be commenced in one year from the date of said lease, at some point in said district of Pawpaw, and such test well be not completed within eighteen months from the commencement of such operations, said lease should be forfeited, and the jury should find for the defendants.'"

"Instruction No. 2 for defendant:

"If the jury find from the evidence that operations for a test well were not actually begun by T. M. Jackson, I. C.

White, and C. L. Smith, in the district of Pawpaw, in Marion county, within one year from the 22d day of February, 1889, but that such test well was actually completed by them, their agents or assigns, within eighteen months from any time the said Jackson, White, and Smith, or their assigns, by the terms of the lease to them from David Jones, could have commenced operations for such test well in said district, then no forfeiture of such lease occurred, and the jury should find for the defendants."

"Instruction No. 3 by the defendant:

"If the jury find from the evidence that the lease offered in evidence by the plaintiff, made to it by David Jones, dated February 28, 1890, contains an exception or reservation of ten (10) acres from the operation of said lease surrounding the buildings of said Jones upon the land in controversy, and that said ten (10) acres have not been laid off or assigned by metes or bounds, or by any definite boundaries, so as to describe or identify the same separately from the residue of said land, then the jury can not render a verdict in favor of the plaintiff for the residue of said land, and, under the declaration in this action, should find for the defendant."

"Instruction No. 4 by defendant:

"If the jury find from the evidence that operations for a test well were not actually begun by T. M. Jackson, I. C. White and C. L. Smith, in the district of Pawpaw, in Marion county, within one year from the 22d day of February, 1889, but that a test well for oil was drilled to completion by them, their agents or assigns, in the said district of Pawpaw, under the lease made by David Jones to said Jackson, White, and Smith, dated February 22d, 1889, within eighteen months from said date, then said lease was saved from forfeiture, and the jury should find for the defendants."

"Instruction of the court, No. 1:

"The court instructs the jury that if they find from the evidence that White and Jackson, of the firm of T. M. Jackson & Co., lessees under the lease from P. W. Youst, dated February 22, 1889, did work in surveying during the summer or fall of 1889, in running lines and ascertain-

ing levels in or near the said P. W. Youst farm, or elsewhere in Pawpaw district; and if they further find from the evidence that said White went upon the P. W. Youst farm in January, 1890, and pointed out to said Youst and Stephenson a place at or near which he intended or desired a well to be drilled for oil; and if they further find from the evidence that at or shortly after the time said White so pointed out said place, and before the 23d day of February, 1890, a contract was made for timber for the rig to be used in drilling said well, and that before or after that a contract was made for drilling said well; and if they further find from the evidence that, in pursuance of a contract made with persons acting for or under said T. M. Jackson & Co., P. W. Youst cut, felled, and hewed on his farm in the woods, at a distance of about a half mile from the place where the well was afterwards drilled, and that same was about two hundred feet from said location so pointed out by said White to said Stephenson and Youst, and on the farm of the latter, a set of rig timbers, twenty eight in number, for the purpose of drilling said well, all of which were afterwards used in the drilling of said well, except two or three, and all of which were allowed to remain in the woods where felled, cut, and hewed for a space of about six or seven weeks before being so used—then they shall further find from the evidence whether or not said actings and doings upon the part of said T. M. Jackson & Co., and all other persons, and the things done and performed and set forth above, operating under and in pursuance of said lease, and for the purposes thereof, were commenced within twelve months from the 22d day of February, 1889; and if they so find from the evidence that operations were so commenced, and a well completed, in pursuance of said commencement, within eighteen months from said commencement, then they should find for the defendant."

"Instruction of the court No. 2:

"If the jury believe from the evidence that T. M. Jackson & Co., or their assigns, or some one for and on behalf of them or their assigns, did not within one year after the 22d day of February, 1889 (the date of the lease from Jones, to T. M. Jackson & Co., which has been introduced in evi-

dence) commence operations for a test well in Pawpaw district of Marion county, then at or after the expiration of the said year the said lease was subject to be forfeited and become null and void, if it be so unequivocally declared by the said Jones; and if, in addition, the jury believe from the evidence that the said Jones executed the lease of February 28, 1890, to the plaintiff, the execution of that lease constituted a declaration, of the said forfeiture, and the jury should find for the plaintiff, unless they further find from the evidence that said Jones did not unequivocally so declare."

On the 11th day of March, 1892, the jury returned a verdict for the plaintiff, and the defendant the South Penn Oil Company moved the court to set aside the verdict, and grant it a new trial, on the ground that the same was contrary to the law and the evidence, and contrary to the first instruction given by the court; and because the court refused to give the instructions prayed for by the defendants; which motion was overruled by the court, the defendant company excepted, and the court rendered judgment on the verdict, and the defendant the South Penn Oil Company obtained this writ of error.

In passing upon the question as to whether the court erred in its rulings and judgment under the circumstances shown by the record in this case, it is necessary for us to determine whether operations were commenced by T. M. Jackson & Co. or their assigns for a test well within one year from the 22d day of February, 1889, at some point in the district of Pawpaw, Marion county; and if so, was the same completed within eighteen months from said commencement?

Can it be said that, in order to commence operations for a test well, the drill must actually begin to penetrate the rock? I do not so understand the meaning of the expression construed in connection with the facts presented by the record. In many places, in order to sink a well, it is necessary that some sort of wooden or metallic casing be provided for the purpose of excluding the soil and clay which must be passed through before the rock is reached; and it would hardly be contended that the purchase and

provision of the necessary material for such casing or cribbing was not an important step towards putting down the well.

Webster defines the word "operation" as "an effect brought about in accordance with a definite plan ;" and, in giving the interpretation ordinarily ascribed to the words "to commence operations"—that is, applying to the words their common acceptation—I would understand the expression to mean the performance of some act which has a tendency to produce an intended result. For instance, if a man had determined to erect a brick house, and, in pursuance of that design, had quarried the rock on his own land to be used in the cellar walls and foundation, and had burned a kiln of brick on the same premises, for the purpose of constructing the walls and chimneys, it surely could not be said that he had not "commenced operations" for the construction of his house, although the roads might then be in such a condition as to prevent him from hauling the stone and brick to the place he had selected for its location.

Another familiar instance that may serve the purpose of illustration is the erection of locks and dams for the purpose of improving navigation by increasing the depth of water. As we are aware, a site must first be selected by surveying and sinking shafts to ascertain the character of the bed rock on which the stone walls are to be located, and immense quantities of stone must be quarried, dressed, and prepared for their place in the walls; and when the location of the lock has been selected, and stone has been quarried and prepared, although it has not been hauled to the location, and no excavations have been made to receive it, we would not be warranted in saying that operations had not been commenced for the construction of the lock.

And, again, where a building has been destroyed by fire, how frequently do we hear it remarked that the owner commenced operations at once for the construction of another by clearing away the debris, and contracting for material with which to rebuild the structure?

The terms of the covenant contained in said lease must be considered as having been complied with, no matter how

slight may have been the commencement of any portion of the work which was a necessary and indispensable part of the work required in putting down the test well if commenced before the 22d day of February, 1890. Procuring the derrick timbers is a work which must necessarily precede the manipulation of the auger and drill by means of an engine and other machinery, and the act of cutting and hewing the timbers for the purpose of constructing the derrick which was used in drilling said test-well can be regarded in no other light than that of an important and indispensable portion of the operations in drilling said well. This portion of the work was completed by the 6th day of February, 1890. The machinery was ordered previous to that time, and the well had been located.

In these circumstances, our conclusion is that operations for the drilling of said test-well were commenced within the year commencing with the date of said lease, and David Jones, at the time of the execution of said second lease, on the 28th day of February, 1890, had notice of the fact, which clearly appears from his own testimony, in which he states that he had heard of the getting out of the timber on the P. W. Youst land, and some persons had told him the well was located, and some that it was not, and he told the plaintiffs that he was an old man; did not want to get into trouble. He thought the time was out in the Jackson lease, but was not sure of it, and he would not lease to them unless that part was put in about the Jackson lease, which was put in at his request, and he would not agree to risk it unless that was put in, meaning the following covenant, contained in said lease, to wit: "The conditions of this lease are understood that David Jones is to be held harmless from a lease made to T. M. Jackson & Co., which expired February 22, 1890."

Operations, then, having commenced previous to the 22d day of February, 1890, for the purpose of sinking said test well, and the said David Jones having notice of the fact no forfeiture of the first lease had occurred on the 28th day of February, 1890, and said second lease would be inoperative either as a declaration of forfeiture or as conferring any rights upon the plaintiff as lessee thereunder.

Having reached the conclusion, then, that operations were commenced in accordance with the letter and spirit of the provisions of said first lease for a test well by the defendant company, or those under whom it claims, it is immaterial whether we construe the conditions contained in said lease that both the commencement must be made within the year, and the well must have been completed within eighteen months from its commencement, as we hold that both of these requirements were complied with.

It is assigned as error that the court should have given the four instructions asked for by the defendant, and should have refused instruction No. 5 asked for by the plaintiff, which was modified by the court and given for the plaintiff. Upon the questions raised by this assignment of error, we hold that the court erred in rejecting the first instruction asked for by the defendant company, for the reason that the facts therein stated, which are fully supported by the evidence, clearly show that no forfeiture occurred of said first lease made by said David Jones; and, no forfeiture having occurred under the facts detailed in said instruction, it was proper to instruct the jury, if they believed those facts, they should find for the defendant.

As to instructions Nos. 2 and 4, asked for by said defendant, we think the court committed no error in rejecting them, for the reason that, under our construction of the covenants contained in said lease, it was as indispensable that the test well should be commenced within the year as it was that it should be completed in eighteen months after it was commenced.

Neither do I think the court erred in rejecting instruction No. 3 asked for by said defendant, for the reason that that is certain which may be made certain, and the verdict might be rendered in pursuance of the terms of the lease. It is the practice in ejectment to claim the exterior boundaries of the land in the declaration, and, if the defendant is entitled to any reservations or exceptions, he may show the fact as a matter of defence. So in the case of *Coal Co.* v. *Howell*, 36 W. Va. 490 (15 S. E. Rep. 214) this Court held that, "before the plaintiff can recover, he must identify the land claimed so far as the exterior boundaries are concerned."

The first instruction given by the court on its own motion should not have been given to the jury, although it was not objected to by the defendant, for the reason that there is no evidence in the case showing or tending to show that T. M. Jackson & Co., were lessees of P. W. Youst, and for that reason the instruction was irrelevant, and calculated to mislead the jury.

The court, however, committed no error in giving instruction Nó. 2 on its own motion, as a modification of No. 5 asked for by the plaintiff; as, under our construction of the covenants contained in said lease, it was necessary that operations for the test well in Pawpaw district, in Marion county, should be commenced within a year from the date thereof, in order to prevent a forfeiture.

It is also claimed that the court erred in overruling the defendant's demurrer to the plaintiff's declaration; yet in the argument it is contended that the court failed to act upon the demurrer, for the reason that the order reads that the court considered the demurrer and the motion to quash the notice given by the plaintiff in this case, and overruled said motion; and while it may be true that a demurrer is not, technically speaking, a motion, yet in substance it amounts to an objection to the sufficiency of the pleading in law, and, if sustained, often results in a dismissal of the plaintiff's action, unless he elects to amend. And in the case under consideration it is evident that it was the intention of the court to overrule the demurrer, because the plural is used, and it appears the demurrer and motion were both considered by the court; but, if the order was silent as to any action upon the demurrer, under the ruling of this Court in *Hood* v. *Maxwell*, 1 W. Va. 219, "a judgment on a verdict virtually overrules all demurrers to the declaration and each count thereof."

The third assignment of error claims that, under the evidence and instruction No. 1 given by the court, the jury should have found a verdict for the defendant, and, having rendered a verdict for the plaintiff, the court should have set said verdict aside. Now, if said instruction No. 1 had been correct in reciting that the lease to Jackson and others of February 22, 1889, was made by David Jones, instead of

P. W. Youst, I would not have held said instruction erroneous, and that may have been a mere clerical error, and, with the correction above suggested, I regard it as correct; but, without reference to said instruction, the verdict was clearly against the weight of evidence, and should have been set aside, and the court erred in not so ruling.

For the reasons before stated, the judgment must be reversed, the verdict set aside, and a new trial awarded, and the defendant in error must pay the costs.

REVERSED. REMANDED.