WALTON *v.* ZATKOFF.

1. MINES AND MINERALS—CONSTRUCTION OF OIL AND GAS LEASE—
   EXTENSIONS—DRILLING OPERATIONS.
   Provision of lease relative to commencement of *operations for
   the drilling of a well* during first year of lease of oil and gas
   rights and phrase relative to commencement of *drilling opera-
   tions* during subsequent years of extensions of the lease after
   payment of annual rental, *held,* not descriptive of different
   actions required of the lessee, the 2 phrases being synonymous,
   where such construction is most consonant with the probable
   intent of the parties.

2. SAME—OIL AND GAS LEASE—EXTENSION BY COMMENCEMENT OF
   DRILLING OPERATIONS—INJUNCTION.
   Activities of party employed by lessee under oil and gas lease in
   making contract to drill a test well, paying a permit fee and
   securing permit from State supervisor of wells, posting a bond,
   surveying of premises, attempting to secure a unitization agree-
   ment covering defendant lessor's and some adjoining property,
   checking out the level of the property, and bulldozing out a
   slush pit before expiration of year for which annual rental had
   been paid *held,* to constitute the commencement of drilling
   operations so as to suspend the necessity of complying with
   other conditions to an extension of the lease such as payment
   for privilege of deferring commencement of drilling operations,
   hence, lessee and its drilling contractor were entitled to decree
   granting injunctive relief against lessor's interference with con-
   tractor's proceeding in good faith to drill a well to completion.

Appeal from St. Clair; Kane (Edward T.), J.
Submitted December 3, 1963. (Calendar No. 109,
Docket No. 50,124.) Decided April 6, 1964.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 24 Am Jur, Gas and Oil § 55 *et seq.*

Bill by H. E. Walton against Miller Zatkoff, Leocadia Zatkoff, and Henry Enderbrock to enjoin interference with oil and gas drilling operations. Panhandle Eastern Pipeline Co. added as intervenor plaintiff, with Consumers Power Company, a Maine corporation, substituted as intervenor plaintiff after appeal. Bill dismissed. Plaintiffs appeal. Reversed and remanded.

*Donald A. Schindler,* for plaintiff.

*Bodman, Longley, Bogle, Armstrong & Dahling* (*Carson C. Grunewald* and *Alfred C. Wortley, Jr.,* of counsel), and *Stuart H. Redner,* for intervenor plaintiff.

*Richard J. Schonk* and *James T. Corden* (*Delmer L. Cleland,* of counsel), for defendant.

Souris, J. On September 6, 1951, defendants Zatkoff entered into an oil and gas lease with Panhandle Eastern Pipeline Co. The provisions of this lease, pertinent parts of which are set forth in the margin,[1]

---

[1] "4. If operations for the drilling of a well for oil or gas are not commenced on said land on or before the 5th day of September, 1952, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor or for the lessor's credit in the Bank of Commerce Bank at Hamtramck, Michigan, or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of $40, which shall operate as a rental and shall cover the privilege of deferring the commencement of drilling operations for 12 months from said date. In like manner and upon like payments or tenders the commencement of drilling operations may be deferred further for like periods of the same number of months successively. All payments or tenders may be made by check or draft of lessee, or any assignee thereof, mailed or delivered on or before the rental paying date. Notwithstanding the death of the lessor, or his successor in interest, the payment or tender of rentals in the manner provided above shall be binding on the heirs, devisees, executors, and administrators of such person. And it is understood and agreed that the consideration first recited herein, covers not only the privilege granted to the date when the said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred.

"5. Should the first well drilled on the above described land be a

gave Panhandle the right to annual extensions of the
lease through September 5, 1961. On April 24, 1961,
Panhandle and plaintiff Walton made an agreement,
whereby Walton was to drill a test well on the Zat-
koff land. Prior to August 31, 1961, Walton had filed
with the State supervisor of wells an application for
permission to drill a well, posted a bond, paid the
permit fee and received the permit, had the leased
premises surveyed and a copy of the survey delivered
to the State supervisor of wells, attempted to secure
a unitization agreement covering the Zatkoffs' prop-
erty and some adjoining property, visited and staked
the drill site, and purchased well-drilling equipment
for the purpose of drilling a well on the Zatkoff prop-
erty. On August 31, 1961, Walton dispatched to
the drill site a bulldozer, which checked the level of
the property and dug a slush pit. The drill, derrick,
and other equipment arrived at the drill site on vari-
ous dates between September 7 and September 13,
1961, or after the September 5th date specified in the
lease. On September 13, 1961, defendant Miller Zat-

dry hole, then, and in that event, if operations for the drilling of a
second well are not commenced on said land on or before the next
ensuing rental paying date, this lease shall terminate as to both
parties, unless the lessee on or before said next ensuing rental paying
date shall resume the payment of rentals in the same amount and in
the same manner as hereinbefore provided. And it is agreed that
upon the resumption of the payment of rentals as above provided, the
last preceding paragraph hereof governing the payment of rentals and
the effect thereof, shall continue in force just as though there had
been no interruption in the rental payments, and if lessee shall com-
mence operations for the drilling of a well within the term of this
lease or any extension thereof, the lessee shall have the right to drill
such well to completion with reasonable diligence and dispatch, and
if oil or gas, or either of them, is found in paying quantities, this
lease shall continue and be in force with like effect as if such well
had been completed within the term of years first mentioned: Pro-
vided, that if drilling or other operations are delayed or interrupted
by lack of water, labor or material; or by fire, storm, flood, war,
rebellion, insurrection, riot, strike, differences with workmen; or
failure of carriers to transport or to furnish facilities for trans-
portation; or as a result of some order, requisition, or necessity of the
government; or as the result of any cause whatsoever beyond the
control of lessee, the time of such delay or interruption shall not be
counted against lessee."

koff sent Walton a letter asking Walton to remove the drilling equipment from his land. The next day Walton filed a bill of complaint asking that defendants be enjoined from interfering with the drilling of a well. By stipulation of the attorneys for all parties, the trial court ordered Panhandle joined as intervenor-plaintiff. By opinion, the trial court held that the lease provision requiring commencement of drilling operations by September 5, 1961, had not been complied with in that plaintiffs had not actually drilled a well or even placed sufficient equipment on the drill site to complete a well to a depth which would satisfactorily test the land for oil and gas. Plaintiffs have appealed, and by order of this Court on stipulation of the parties, Consumers Power Company, successor in interest to Panhandle, was substituted as intervenor-plaintiff and appellant.

It will be noted from the lease provisions printed in the margin, *supra,* that 2 slightly different phrases are employed to describe the lessee's duty of exploitation: commencement of "operations for the drilling of a well" and commencement of "drilling operations." It is defendants' contention that these phrases are employed precisely and distinctively, and that the latter phrase requires that a drill be in operation and actually have penetrated into the ground. Defendants maintain that as used in paragraph 4, commencement of operations for the drilling of a well is the standard to be employed during the initial lease year in measuring the lessee's actions during such year but that in later years the assertedly stricter test of "commencement of drilling operations" must be met. Paragraph 5, say defendants, is irrelevant for present consideration, since it applies only in case an unproductive well has been first drilled.

We are unable to agree with defendants that this lease indicates that the 2 phrases under considera-

tion were intended to be descriptive of different actions required of the lessee. By paragraph 4, the lessee had until September 5, 1952, to commence "operations for the drilling of a well," and if it had not done so by then a payment of $40 would provide for it the privilege of "deferring the commencement of drilling operations for 12 months from said date." "Defer" thus equates "drilling operations" to "operations for the drilling of a well." What is being deferred is commencement of the latter, and the phrase "drilling operations" is synonymous with, but more succinct than, the longer phrase.

The second sentence of paragraph 5 provides that upon resumption of rental payments paragraph 4 shall continue in force and further says that if lessee shall "commence operations for the drilling of a well within the term of this lease or any extension thereof" lessee should have the right to drill the well to completion. Paragraph 4, which is thus expressly incorporated into paragraph 5, provides that for extensions without rental payments "drilling operations" must commence, while paragraph 5 itself speaks of "operations for the drilling of a well." Thus, to hold that the phrases were intended to have a different meaning would be to say that the lease as drafted was self-contradictory, a conclusion which may be avoided by the more reasonable assumption that the shorter phrase is simply a foreshortening of the longer.

The construction we adopt is that most consonant with the probable intent of the parties. Thus, in a stipulation signed by the attorneys for all parties, it is stated:

"Delay rentals were paid yearly for the privilege of deferring commencement of operations for the drilling of a well, the last such delay rental paying for such deferral through September 5, 1961, at midnight."

This indicates that defendants' presently advanced distinction between the 2 phrases is an afterthought and is not representative of the actual understanding of the parties to the lease.

Although some courts have purported to draw a distinction between phraseology similar to "commencement of operations for the drilling of a well" and "commencement of drilling operations,"[2] others have rejected such a distinction,[3] and it is with the latter jurisdictions that we align ourselves, at least absent persuasive showing that the parties intended a distinction to exist. Such a position is in accord with *Robinson* v. *Gordon Oil Co.*, 258 Mich 643, where a lease was placed in escrow to be delivered to plaintiff when a proposed well had attained a depth of 500 feet, provided that "actual work in connection with the drilling of said well had been commenced on or before December 1, 1930." We held that plaintiff had complied with this provision when prior to December 1, 1930, he had selected the well site, contracted for the drilling, hauled the requisite sand and gravel onto the site, dug a slush pit, erected a

[2] *E.g., Solberg* v. *Sunburst Oil & Gas Co.* (1925), 73 Mont 94 (235 P 761).

[3] *E.g., Fast* v. *Whitney* (1920), 26 Wyo 433 (187 P 192); and see *Petersen* v. *Robinson Oil & Gas Co.* (Tex Civ App, 1962), 356 SW2d 217. The lease in *Petersen* spoke of commencement of "operations for drilling" during the first year of the lease and of the payment of a delay rental for "the privilege of deferring commencement of drilling operations" for 9 succeeding years through March 27, 1957. "The evidence shows that lessee engaged J. B. Ferguson, a drilling contractor, to drill a well on the leased land several days before the end of the primary term; that he employed a surveyor to stake a location for the well, who began his survey March 26, 1957, and staked the well location March 27, 1957. On March 27, 1957, the employees of J. B. Ferguson moved a maintainer onto the lease and worked 2 hours leveling the well location." p 219. Later the well was drilled to a successful completion. "The record in this case supports the implied findings of the trial court that prior to the end of the primary term of the lease the lessee had set into motion the process of drilling a well, and that such acts preliminary to the actual work of drilling were performed with the bona fide intention of proceeding with diligence to the completion of the well. The lease did not terminate, as appellants contend, by reason of the failure of lessee to begin and prosecute required drilling operations." p 220.

derrick and rig, and installed some machinery. This Court analyzed other cases thusly (pp 646–648):

"In *Terry* v. *Texas Co.* (Tex Civ App), 228 SW. 1019, the lease required the lessee to 'commence to drill a test well for oil within 8 months.' The court held, quoting from the syllabus:

" 'Lessee, by placing timbers for erection of derrick and machinery, including boiler, on the ground where oil well was to be drilled, complied with provision requiring him to "commence to drill" well within a certain period; the word "commence" being defined as "to perform the first act of." '

"In the instant case the lease did not require the plaintiff 'to commence to drill' by a certain time as the lease did in *Terry* v. *Texas Co., supra*. It required him to do some 'actual work in connection with the drilling by December 1, 1930.' Language substantially the same has been construed in other cases where the requirement of the lease was that lessee should 'begin operations' in a definite time. For instance, in *Cox* v. *Miller,* 206 Mo App 576 (227 SW 652), a mining lease required the lessee 'to begin operations on said land under this lease within 60 days.' It was held that preparing the necessary timbers, prospecting, locating shafts, and placing machinery was a sufficient compliance with the terms of the lease.

"In *Fleming Oil & Gas Co.* v. *South Penn Co.,* 37 W Va 645 (17. SE 203), the language of the lease was 'to commence operations for a test well within 1 year,' et cetera. It was held that locating the well, cutting down timbers for constructing a derrick, making a contract with a party for drilling, and ordering machinery is 'commencing operations' for a test well, though neither the timber nor machinery was hauled to the location during the time specified because of the condition of the roads.

"In *Hudspeth* v. *Producers' Oil Co.,* 134 La 1013 (64 So 891), the lease required the lessee 'to commence operations on the tract by drilling, boring or

mining for oil within 24 months,' et cetera. Within the time specified the lessee cleared 12 acres of land and sawed timber for the construction of the derricks. It was held that this work was a commencement of operations by 'drilling, boring and mining' within the meaning of the lease.

*"The theory of these cases is that the work done in preparation for drilling a well is a necessary part of the drilling.* So in the instant case, assuming but not holding that the lease required the plaintiff to begin drilling on or before December 1, 1930, *he satisfied that requirement of the lease in the preparations he made for drilling. They were a necessary part of the drilling."* (Emphasis added.)

The effect of the Court's language in *Robinson* is that Walton's activities were sufficient to meet the requirements of the lease. Such is the weight of modern authority as discussed in 2 Summers, The Law of Oil & Gas, § 349 (1959):

"The general rule seems to be that actual drilling is unnecessary, but that the location of wells, hauling lumber on the premises, erection of derricks, providing a water supply, moving machinery on the premises and similar acts preliminary to the beginning of the actual work of drilling, when performed with the bona fide intention to proceed thereafter with diligence toward the completion of the well, constitute a commencement or beginning of a well or drilling operations within the meaning of this clause of the lease."

We hold, therefore, that Walton, acting in behalf of the lessee, had commenced operations for the drilling of a well before the lease had expired and, there being no evidence that he did not intend to proceed in good faith to actual drilling, we reverse and remand for entry of a decree granting injunctive relief against defendants' interference with Walton's proceeding in good faith to drill a well to completion.

Reversed and remanded. Costs to plaintiffs.

KAVANAGH, C. J., and DETHMERS, KELLY, SMITH, and O'HARA, JJ., concurred.

BLACK, J., did not sit.

ADAMS, J., took no part in the decision of this case.