LEONARD CRUDE OIL COMPANY *v* WALTON

MINES AND MINERALS—OIL—DRILLING—COMMENCEMENT.

A farm-out assignee of oil and gas leases "commenced opera-tions" for drilling a well on defendant lessor's land before the lease expired within the meaning of the lease where, prior to the expiration date, the assignee entered into an agreement with an oil company to drill the well, caused a property survey to be made, applied for and received a drilling permit, moved drilling equipment to the well location, attempted to go forward with a well when litigation began involving two of the lessors, requested and received an order from the State Supervisor of Wells pooling the lessors' tracts and, upon determination of the litigation between the two lessors, drilled the well to completion.

Appeal from Isabella, Robert H. Campbell, J. Submitted Division 3 February 3, 1972, at Grand Rapids. (Docket No. 10959.) Decided March 22, 1972.

Complaint for interpleader by Leonard Crude Oil Company against H. E. Walton, Ernest A. De-Muynck, and others, to determine ownership rights of competing interest holders to the proceeds of an oil well. Summary judgment for all interest holders defendants except defendant DeMuynck. Defendant DeMuynck appeals. Affirmed.

*Lynch, Gallagher, Lynch & Kerr,* for defendant Walton.

*Towner, Rosin & York (Paul F. McNamara,* co-counsel), for defendant DeMuynck.

REFERENCE FOR POINTS IN HEADNOTE
38 Am Jur 2d, Gas and Oil §§ 121, 222.

Before: Fitzgerald, P. J., and R. B. Burns and Holbrook, JJ.

Fitzgerald, P. J. Plaintiff, Leonard Crude Oil Company, a Michigan corporation, commenced an interpleader action in the Isabella County Circuit Court. Plaintiff sought thereby to obtain a determination as to the ownership rights of competing interest holders to proceeds of an oil well, known as the Zatkoff and DeMuynck No. 1 Well, located on a drilling unit in Ira Township, St. Clair County, Michigan. Defendants Miller Zatkoff and Leocadia Zatkoff are owners, as husband and wife, of the south 1/2 (20 acres) of the drilling unit, the well being situated upon the Zatkoff parcel of property. Defendant Ernest A. DeMuynck is the owner of the north 1/2 (20 acres) of the drilling unit upon which the well in question is located. The court granted summary judgment in favor of plaintiff, defendants Zatkoff and defendant assignees, as leasehold estate owners pursuant to GCR 1963, 117.2(3). From denial of a similar motion by defendant DeMuynck, he appeals.

On September 6, 1951, defendants Zatkoff entered into an oil and gas lease, involving their parcel of property, with Panhandle Eastern Pipe Line Company as lessee. The lease was for a primary term of 10 years and provided for continuation thereafter as long as oil or gas was able to be produced from the land by the lessee. The lease provided for a 1/8 royalty to be paid to the Zatkoffs, as lessors, for all oil and gas produced. Defendant Ernest A. DeMuynck, on February 11, 1952, likewise leased to Panhandle Eastern Pipe Line Company, as lessee, his parcel of property which was later to become the north 1/2 of the drilling unit in question. The De-

Muynck lease[1] similar in its terms to the Zatkoff
lease, provided for the lessee to conduct oil and gas
production operations on the leased land in consider-
ation for a 1/8 royalty to be paid to defendant, as
lessor, for all oil and gas produced therefrom. The

---

[1] The DeMuynck lease, containing provisions identical to those
of the Zatkoff lease, provided in part:

"2. It is agreed that this lease shall remain in force for a term
of ten (10) years from this date, and as long thereafter as oil
or gas, or either of them, is or can be produced from said land by
Lessee.

\*    \*    \*

"4. If operations for the drilling of a well for oil or gas are
not commenced on said land on or before the 10th day of Feb-
ruary, 1953, this lease shall terminate as to both parties, unless the
Lessee on or before that date shall pay or tender to the Lessor
or for the Lessor's credit in the Citizens State Savings bank at
New Baltimore, Michigan, or its successors, which shall continue
as the depository regardless of changes in the ownership of said
land, the sum of Forty Dollars ($40.00), which shall operate as
a rental and shall cover the privilege of deferring the commence-
ment of drilling operations for 12 months from said date. In like
manner and upon like payments or tenders the comemncement of
drilling operations may be deferred further for like periods of
the same number of months successively. \* \* \*

"5. Should the first well drilled on the above described land
be a dry hole, then, and in that event, if operations for the
drilling of a second well are not commenced on said land on or
before the next ensuing rental paying date, this lease shall ter-
minate as to both parties, unless the Lessee on or before said
next ensuing rental paying date shall resume the payment of rentals
in the same amount and in the same manner as hereinbefore pro-
vided. And it is agreed that upon the resumption of the pay-
ment of rentals as above provided, the last preceding paragraph
hereof governing the payment of rentals and the effect thereof,
shall continue in force just as though there had been no interrup-
tion in the rental payments, and *if Lessee shall commence oper-
ations for the drilling of a well within the term of this lease or
any extension thereof, the Lessee shall have the right to drill such
well to completion with reasonable diligence and dispatch, and if
oil or gas, or either of them, is found in paying quantities, this
lease shall continue and be in force with like effect as if such
well had been completed within the term of years first mentioned:*
Provided, that if drilling or other operations are delayed or in-
terrupted by lack of water, labor or material; or by fire, storm,
flood, war, rebellion, insurrection, riot, strike, differences with
workmen; or failure of carriers to transport or to furnish facilities
for transportation; or as a result of some order, requisition, or
necessity of the government; or as the result of any cause what-
soever beyond the control of Lessee, the time of such delay or
interruption shall not be counted against Lessee." (Emphasis sup-
plied.)

primary term of the DeMuynck lease extended through February 10, 1962. Both the Zatkoff and DeMuynck leases were later assigned by Panhandle, as lessee, to defendant H. E. Walton as farm-out assignee.

On April 28, 1959, following a public hearing, the State Supervisor of Wells issued a spacing order pursuant to § 6(j), 1939 PA 61, MCLA 319.6(j); MSA 13.139(6)(j).[2] The order, later amended to expand the area covered thereby, dealt with the Boyd Basal Salina-Niagaran Formation Pool, which included the lands covered by the Zatkoff and De-Muynck leases in question. The order provided in part:

*"(B) Drilling Unit And Well Spacing Pattern*

"1. The drilling unit for wells drilled for oil or gas in the pool defined in (A) above shall be a governmental surveyed quarter-quarter section of land.

"2. No permit shall be granted for the drilling of any well for oil or gas in the pool described in (A) above unless it is located in the center of the southeast one quarter (1/4) of the drilling unit as described in (B)–1 above."

The foregoing spacing order had the effect of creating a single 40-acre drilling unit comprised of the DeMuynck and Zatkoff tracts. The only permissible oil and gas well thereon was granted to be located on the Zatkoff portion of the drilling unit.

By agreement with Panhandle Eastern Pipe Line Company dated April 24, 1961, defendant H. E. Walton was to drill a test well on the Zatkoff land conforming to the spacing order as to the unit and

---

[2] "The supervisor is hereby empowered and it is his duty to prevent the waste prohibited by this act. To that end, acting directly or through his authorized representative, the supervisor, after consulting with the board, is specifically empowered * * *

(j) To fix the spacing of wells."

The foregoing provision was amended by 1967 PA 98, effective November 2.

the well location thereon.  On June 30, 1961, defendant Walton applied to the State Supervisor of Wells for a permit to drill the well, to be known as the Zatkoff and DeMuynck No. 1 Well.  A drilling permit was subsequently issued to Walton on July 14, 1961. During August and September 1961, defendant Walton had the leased premises surveyed; had a copy of the survey delivered to the State Supervisor of Wells; attempted to obtain a unitization agreement covering the Zatkoffs' property and adjoining property; visited and staked the drill site; purchased well-drilling equipment for the purpose of drilling a well on the Zatkoff property; and had equipment dispatched to the site.  See *Walton* v *Zatkoff*, 372 Mich 491, 493 (1964).  On September 13, 1961, defendants Zatkoff ordered defendant Walton to remove his equipment, whereupon Walton filed a bill of complaint asking that the Zatkoffs be enjoined from interfering with the well drilling operations on the land.  The trial court held that the lease provision requiring commencement of drilling operations by September 5, 1961, had not been complied with; defendant Walton, in the opinion of the court, not having actually drilled a well nor having placed sufficient equipment on the drill site for that purpose. *Walton* v *Zatkoff*, *supra*, p 494.  The Supreme Court reversed, holding that the lease remained valid and that Walton did "commence operations for the drilling of a well within the term" as set forth in the Zatkoff lease.  *Walton* v *Zatkoff*, *supra*, p 498. Defendant Walton requested the State Supervisor of Wells to pool the DeMuynck and Zatkoff tracts to form a drilling unit in conformity with the supervisor's prior spacing order.  A public hearing was held on said request on February 9, 1962, following publication of notice and service thereof upon defendant DeMuynck.  On February 15, 1962, four

days after the expiration date provided in the De-Muynck lease, the Supervisor of Wells issued a pooling order regarding the DeMuynck and Zatkoff tracts. The order, issued pursuant to MCLA 319.13; MSA 13.139(13),[3] provided for the pooling of the DeMuynck and Zatkoff properties to form a single drilling unit, and stated in part as follows:

"The Supervisor of Wells  *  *  *  finds as follows:

"(1) That a request was made on January 25, 1962, by James D. Tack, Legal Department, Panhandle Eastern Pipe Line Company, representing H. E. Walton, farm-out assignee,  *  *  *  for a pooling order to form a drilling unit in conformance

---

[3] "To prevent the drilling of unnecessary wells the supervisor, after conference with and recommendation by the board, may fix a drilling unit for each pool. A drilling unit, as contemplated herein, means the maximum area which may be efficiently and economically drained by 1 well and such unit shall constitute a developed area as long as a well is located thereon which is capable of producing the economically recoverable oil thereunder. Each well permitted to be drilled upon any drilling unit shall be located in the approximate center thereof, or at such other location thereon as may be necessary to conform to a uniform well spacing pattern as adopted and promulgated by the supervisor after due notice and public hearing, as provided in this act.

*     *     *

"The pooling of properties or parts thereof shall be permitted, and, if not agreed upon, the supervisor after conference with and recommendations by the board, may require such pooling in any case when and to the extent that the smallness or shape of a separately owned tract or tracts would, under the enforcement of a uniform spacing plan or proration or drilling unit, otherwise deprive or tend to deprive the owner of such tract of the opportunity to recover or receive his just and equitable share of the oil and gas and gas energy in the pool:  *  *  *  All orders requiring such pooling shall be upon terms and conditions that are just and reasonable, and will afford to the owner of each tract in the pooling plan the opportunity to recover or receive his just and equitable share of the oil and gas and gas energy in the pool as above provided, and without unnecessary expense, and will prevent or minimize reasonably avoidable drainage from each developed tract which is not equalized by counter drainage. The portion of the production allocated to the owner of each tract included in a drilling unit formed by voluntary agreement or by a pooling order shall, when produced, be considered as if it had been produced from such tract by a well drilled thereon."

with the spacing order for the Boyd Salina-Niagaran Formation Pool effective on April 23, 1959, and amended on August 17, 1961.

"(2) That the spacing order provides the drilling unit shall be a quarter-quarter section of land with the well on the unit to be located in the southeast one quarter thereof.

"(3) That the unit for which a pooling order has been requested is the NW-1/4 of the SE-1/4 of Section 6, Township 3 North, Range 15 East, Ira Township, St. Clair County, and for which Permit Number 23410 was issued on July 14, 1961, for a unit designated as the Zatkoff & DeMuynck #1.

"(4) That Ernest A. DeMuynck is the lessor on the north one half and Miller Zatkoff and Leocadia Zatkoff are lessors on the south one half of the forty-acre drilling unit; and that both properties are under lease to Panhandle Eastern Pipe Line Company, with the leases subject to a farm-out agreement between Panhandle Eastern Pipe Line Company and H. E. Walton.

"(5) That Ernest A. DeMuynck and Miller and Leocadia Zatkoff have refused to sign an agreement to pool or communitize the north one half and the south one half of the quarter-quarter section to form a drilling unit in conformance with the spacing order.

"(6) That drilling equipment is currently on the location for which Permit Number 23410 was issued.

"Pursuant to the recommendation of the Advisory Board following their consideration of the above findings, it is the conclusion of the Supervisor of Wells that an order to pool should be issued to provide for the forming of a drilling unit in conformance with the spacing order, to protect correlative rights, and to prevent the drilling of unnecessary wells.

"Section 13 of Act No. 61 of the Public Acts of the State of Michigan, 1939, as amended, provides that

all orders of the Supervisor of Wells requiring pooling shall be on terms which are just and reasonable. *The separately owned tracts, in order to receive their just and equitable share of the allowable production from the drilling unit, shall share in said production in the ratio of the area of each tract to the area of the full unit.* The portion of the production allocated to each tract included in the drilling unit formed by this pooling order shall, when produced, be considered as if it has been produced from such tract by a well drilled thereon." (Emphasis supplied.)

Defendant Walton drilled the well to completion as an oil producer. Defendant DeMuynck concedes on appeal that the spacing order of 1959, as amended, and the pooling order of 1962, as issued by the State Supervisor of Wells, were designed for the orderly development of mineral, gas, and oil production, as well as to prevent waste and pollution. While defendant DeMuynck has expressed his willingness to abide by the orders in question, he contends on appeal as he did in the trial court that the lease pertaining to his tract of land expired on February 11, 1962, so that commencement of operations for drilling on the Zatkoff tract, within the drilling unit, may not be deemed to have occurred within the ten-year term of the DeMuynck lease. He urges, therefore, that he is entitled to 1/2 of the rights to oil from said well inasmuch as he is the owner of 1/2 of the property within the pooling unit.

The trial court, in its opinion of December 16, 1970, stated in part:

"It is the opinion of this court that the commencement of a well by defendant Walton on the Zatkoff property prior to the expiration of the DeMuynck lease continued the terms of the DeMuynck lease

and because of the spacing pattern set up by the Supervisor of Wells to where it was necessary to pool the Zatkoff 20 acres with the DeMuynck 20 acres in order to comprise a 40-acre drilling unit, this was sufficient to continue the validity of said leases. To hold otherwise would make for inconsistent drilling and production patterns. The court is also of the opinion that commencing proceedings for the pooling order prior to expiration of the DeMuynck lease was sufficient to come within the term of said lease, although the court does not believe this procedure was necessary in order to continue the validity of the lease. A well could very properly be commenced prior to the expiration of a lease, but no production until after the expiration of a lease and proceedings for a pooling order wouldn't be commenced unless there was production which could be after the expiration of the lease."

The judgment order of January 12, 1971, contained in part the following:

"8. Defendant Walton drilled [the Zatkoff and DeMuynck No. 1 well] to completion as a producer of oil and/or gas and one-half of the production from such well is allocated to the DeMuynck lease and the remaining one-half to the Zatkoff lease, such well being situate on a 40-acre drilling unit under the above referred to spacing order of the Supervisor of Wells. Land from the DeMuynck lease comprises the North 1/2 of such drilling unit and land from the Zatkoff lease comprises the South 1/2 thereof.

"9. The Zatkoff and DeMuynck Number 1 was drilled by the defendant Walton pursuant to agreement with Panhandle Eastern Pipe Line Company and assignments of the referred-to leases have been made to defendants, with the exception of defendant DeMuynck, so that the leasehold estates created by said leases, subject to an overriding royalty of 1/16th

of 8/8th owned by H. E. Walton, defendant, are owned and divided as follows:

| | |
|---|---|
| H. E. Walton | 1/16 |
| Estate of John T. Allmand | 2/16 |
| James A. Beresford | 2/16 |
| Estate of Eugene A. Casaroll | 2/16 |
| Roland Redner | 1/16 |
| The Utility & Industrial Supply | 8/16 |
| | 16/16ths |

"Provided that, by stipulation in open court and as between H. E. Walton and the Eugene A. Casaroll estate only, the claims of said estate as to Walton's 1/16th overriding royalty and 1/16th interest shall be resolved by the court on application of either of these parties.

"10. The actions and doings of defendant H. E. Walton with respect to the Zatkoff and DeMuynck Well Number 1, * * * constituted commencement of a well within the ten-year term of the DeMuynck lease, even though the well was physically situate on the Zatkoff property, and the drilling thereof to completion and production of oil or gas therefrom have continued the DeMuynck lease in full force and effect, and it is determined that said lease is and continues to be a valid and subsisting lease as to all land covered thereby and that the North 1/2 of the Northwest 1/4 of the Southeast 1/4 of said Section 6, being land covered by the DeMuynck lease, together with the South 1/2 of the Northwest 1/4 of the Southeast 1/4 of said Section 6, being land covered by the Zatkoff lease, comprise a 40-acre drilling unit under the above referred-to spacing order, as well as the pooling order, also above referred to, described as the Northwest 1/4 of the Southwest 1/4 of said Section 6, with the Zatkoff and DeMuynck Well Number 1 being located on the Southeast 1/4 of such 40 acres.

"11. Leonard Crude Oil Company, the plaintiff herein, purchased oil produced from said well. Because of conflicting claims as to ownership of the

50% share of production from such well allocated to the DeMuynck property as comprising 50% of the 40-acre drilling unit, Leonard impounded certain proceeds payable by reason of its purchase of such production, and brought this interpleader action to determine the persons entitled to payment thereof and their respective portions. Leonard has paid into this court the sum of $27,295.25 and also the sum of $3,817.96, being monies impounded by Leonard as aforesaid. This court determines that the DeMuynck lease was maintained in full force and effect by said well and DeMuynck is entitled only to the 1/8th royalty provided to the lessor therein, being payable on 50% of the production from said well since 50% thereof is allocated to that lease and the remaining 50% to the Zatkoff lease. After deducting DeMuynck's 1/8th royalty and Walton's 1/16th overriding royalty, the remaining 13/16th is divided among the leasehold estate owners as set forth in paragraph 9, above. Said sum of $27,295.25, impounded by Leonard and paid into court, is allocated $5,911.90 to DeMuynck as 1/8th royalty, $2,955.95 to Walton as 1/16th overriding royalty, and $18,427.41 as 13/16th share (working interest) to said leasehold estate owners in their respective proportions, $20,000 having been paid by Leonard to the leasehold estate owners prior to this action, all as set forth in paragraph 6 of Leonard's complaint.

"Said sums paid into court are owned by the parties as follows:
The sum of $27,295.25 as follows:

| | | | |
|---|---|---|---|
| DeMuynck | [1/8 of $47,295.25] | $ 5,911.91 | [Royalty] |
| Walton | [1/16 of $47,295.25] | 2,955.96 | [Overriding Royalty] |
| Walton | [1/16 of $27,295.25 less 8,867.87 or 18,427.38] | 1,151.72 | [Working Interest] |
| Allmand | [2/16 of $18,427.38] | 2,303.43 | [Working Interest] |
| Beresford | [2/16 of $18,427.38] | 2,303.42 | [Working Interest] |
| Casaroll | [2/16 of $18,427.38] | 2,303.42 | [Working Interest] |
| Redner | [1/16 of $18,427.38] | 1,151.71 | [Working Interest] |
| U & I | [8/16 of $18,427.38] | 9,213.68 | [Working Interest] |

$27,295.25

The sum of $3,817.96 as follows:

| DeMuynck  | (1/8 of 8/8)              | $  477.25  | [Royalty]              |
|-----------|---------------------------|-----------:|------------------------|
| Walton    | (1/16 of 8/8)             | 238.62     | [Overriding Royalty]   |
| Walton    | (1/16 of 13/16 of 8/8)    | 193.88     | [Working Interest]     |
| Allmand   | (2/16 of 13/16 of 8/8)    | 387.76     | [Working Interest]     |
| Beresford | (2/16 of 13/16 of 8/8)    | 387.76     | [Working Interest]     |
| Casaroll  | (2/16 of 13/16 of 8/8)    | 387.76     | [Working Interest]     |
| Redner    | (1/16 of 13/16 of 8/8)    | 193.88     | [Working Interest]     |
| U & I     | (8/16 of 13/16 of 8/8)    | 1,551.05   | [Working Interest]     |

$3,817.96"

The question which is dispositive of this appeal may be restated as follows: *Did defendant Walton "commence operations for the drilling of a well" within the terms of defendant DeMuynck's lease so as to continue that lease in force and provide for DeMuynck's sharing with defendants Zatkoff, pursuant to the respective leases, the production from the well, as specified in the pooling order, by the terms of which order defendant DeMuynck has expressed a willingness to abide?*

The thrust of defendant DeMuynck's argument on appeal is that the spacing order of the State Supervisor of Wells regarding the DeMuynck and Zatkoff tracts within the drilling unit did not constitute a commencement of well drilling under his lease; that the lease had expired on February 11, 1962; that he was not, therefore, bound by the lease; and that he was entitled to 1/2 of the oil rights in said well on account of his 1/2 ownership of the drilling unit rather than to the 1/8 royalty specified in the lease. Defendants Zatkoff, Walton, and the other leasehold estate owners, however, counter by asserting that defendant DeMuynck's lease did not expire; defendant Walton, as farm-out assignee, having "commenced operations for drilling" prior to the date of expiration of the lease by taking the following action: entering into agreement with Panhandle to drill the well in question; causing a survey to be made and applying for a permit to drill; receiving

a permit to drill the well; moving drilling equipment to the well location; attempting to go forward with a well when litigation in the case of *Walton* v *Zatkoff*, *supra,* was commenced; requesting that the De-Muynck and Zatkoff tracts be pooled and, after the date set for expiration of the DeMuynck lease, receiving an order pooling the lands; and, upon determination of the litigation in *Walton* v *Zatkoff*, *supra,* drilling the well to completion.

In *Walton* v *Zatkoff, supra,* the Supreme Court dealt with the question of what constitutes "commencement of drilling operations" or "commencement of operations for the drilling of a well" and, in that regard, stated in part the following at pp 496–498:

"[In] *Robinson* v *Gordon Oil Co,* 258 Mich 643 (1932), * * * a lease was placed in escrow to be delivered to plaintiff when a proposed well had attained a depth of 500 feet, provided that 'actual work in connection with the drilling of said well had been commenced on or before December 1, 1930.' We held that plaintiff had complied with this provision when prior to December 1, 1930, he had selected the well site, contracted for the drilling, hauled the requisite sand and gravel onto the site, dug a slush pit, erected a derrick and rig, and installed some machinery. This Court analyzed other cases thusly (pp 646–648):

\* \* \*

" 'In *Fleming Oil & Gas Co* v *South Penn Co,* 37 W Va 645; 17 SE 203 (1893), the language of the lease was "to commence operations for a test well within 1 year," et cetera. It was held that locating the well, cutting down timbers for constructing a derrick, making a contract with a party for drilling, and ordering machinery is "commencing operations" for a test well, though neither the timber nor machinery was hauled to the location during the time specified because of the condition of the roads.

" 'In *Hudspeth* v *Producers' Oil Co,* 134 La 1013; 64 So 891 (1914), the lease required the lessee "to commence operations on the tract by drilling, boring or mining for oil within 24 months," et cetera. Within the time specified the lessee cleared 12 acres of land and sawed timber for the construction of the derricks. It was held that this work was a commencement of operations by "drilling, boring and mining" within the meaning of the lease.

" '*The theory of these cases is that the work done in preparation for drilling a well is a necessary part of the drilling.* So in the instant case, assuming but not holding that the lease required the plaintiff to begin drilling on or before December 1, 1930, *he satisfied that requirement of the lease in the preparations he made for drilling. They were a necessary part of the drilling.*' (Emphasis added.)

"The effect of the Court's language in *Robinson* is that Walton's activities were sufficient to meet the requirements of the lease. Such is the weight of modern authority as discussed in 2 Summers, The Law of Oil & Gas, § 349 (1959):

" 'The general rule seems to be that actual drilling is unnecessary, but that the location of wells, hauling lumber on the premises, erection of derricks, providing a water supply, moving machinery on the premises and *similar acts preliminary to the beginning of the actual work of drilling,* when performed with the bona fide intention to proceed thereafter with diligence toward the completion of the well, *constitute a commencement or beginning of a well or drilling operations within the meaning of this clause of the lease.*'

"We hold, therefore, that Walton, acting in behalf of the lessee, had commenced operations for the drilling of a well before the lease had expired and, there being no evidence that he did not intend to proceed in good faith to actual drilling, we reverse and remand for entry of a decree granting injunctive relief against defendants' interference with Walton's

proceeding in good faith to drill a well to completion." (Emphasis supplied.)

We deem the foregoing to be dispositive of the question herein considered. We hold that the activities undertaken by defendant Walton regarding the DeMuynck-Zatkoff tracts, and preparatory to actual drilling on the Zatkoff tract, had the effect of maintaining in force the DeMuynck lease, as the same applied to the DeMuynck property encompassing the North 1/2 of the drilling unit as fixed by the State Supervisor of Wells.

It is to be noted that defendant DeMuynck does not dispute the court's determination as to the proper allocation of the sums paid into court by plaintiff other than to claim that he is not bound by his lease as to the amount of production owing him. Having determined that defendant DeMuynck's lease with Panhandle did not expire, and absent a showing to the contrary, this Court holds that the trial court's allocation of production revenues from the Zatkoff and DeMuynck No. 1 Well, as reflected in the judgment order heretofore set forth, was not improper. The motion of defendants Zatkoff, Walton, and the other leasehold estate owners for summary judgment was properly granted. *Midwest Bridge Co* v *Highway Department*, 24 Mich App 151 (1970).

Affirmed. Costs to defendants-appellees.

All concurred.